UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHELTON J. HAYNES and GRETCHEN K. ROBINSON,<br><br>                  Plaintiffs,<br><br>     v.<br><br>ROGER MALDONADO, TANIA DISSANAYAKE, DIANA LOPEZ, ALEJANDRO VALELLA, and RUTHANNE VISNAUSKUS<br><br>              Defendants. | \_\_ CV \_\_\_<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Shelton J. Haynes and Gretchen K. Robinson, by their undersigned attorneys, allege as follows:

## PRELIMINARY STATEMENT

1.       This is a case about how the Executive Chamber for the Office of the Governor of New York (the "Chamber") and the Roosevelt Island Operating Corporation ("RIOC") have unfairly subjected Shelton J. Haynes and Gretchen K. Robinson ("Robinson," and together with Haynes, the "Plaintiffs"), two African American executives, to continuous and pervasive discrimination by, including but not limited to, subjecting Haynes and Robinson to frequent unwarranted investigations by the New York State Inspector General ("NYSIG") as well as ordering an independent investigation by an outside counsel – something not done for other, more serious allegations – based entirely on specious allegations of wrongdoing.  The Chamber did so while simultaneously thwarting Haynes's and Robinson's efforts to fight back against the discrimination and defend themselves and RIOC against a multitude of defamatory statements made by a local blogger and a group of disgruntled former employees.  After a seven-month

1

investigation by an outside counsel – an investigation that was wholly out of step with prior practice of the RIOC Board of Directors (the "RIOC Board") and referred to by one RIOC Board Member as a "f****** racist witch hunt" – State officials close to the Governor, led by Defendants Alejandro Valella ("Valella," who provided updates to the Chamber on the investigation) and Diana Lopez ("Lopez") intentionally delayed outside counsel's publication of a report that exonerated Plaintiffs of wrongdoing, and instructed outside counsel to sanitize the first draft of the report to remove and cover up the findings that confirmed and supported Plaintiffs' ongoing complaints of experiencing racial discrimination while working at RIOC.  Other Chamber officials, including Defendants Roger Maldonado ("Maldonado"), Tania Dissanayake ("Dissanayake"), RuthAnne Visnauskas ("Visnauskas"), and Lopez, who were aware of the discrimination findings in the report, have discriminated and retaliated against Plaintiffs by, among other means:  (1) installing RIOC Board Members – who, from the beginning of their board tenures, have been antagonistic to Plaintiffs – without consulting Plaintiffs (a departure from prior practice); and (2) preventing existing  RIOC Board Members – who are supportive of Haynes and Robinson – from filling committee vacancies.  Through their actions, Defendants Valella, Lopez, Maldonado, Dissanayake, and Visnauskas (collectively, the "Defendants") have also subjected Plaintiffs to a hostile work environment.  In doing so, they have made their message to Plaintiffs clear:  GET OUT.

2.     The unprecedented actions taken against Haynes and Robinson were never taken against previous, similarly situated White RIOC executives.

3.     Defendants' conduct violates federal, state, and city law.  Accordingly, Plaintiffs bring this action pursuant to 42 U.S.C. § 1983; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §§ 290 *et seq*.; and the New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq*.  The causes of action against Defendants are brought against them in their individual capacities.

4.      Collateral to the filing of this complaint, Plaintiffs are initiating the charge of discrimination process with the Equal Employment Opportunity Commission, alleging violations of Title VII of the Civil Rights Act of 1964 against the Chamber and RIOC, and they will amend this complaint upon their receipt of a Notice of Right to Sue letter.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) over Plaintiffs' federal claims.  This Court has supplemental jurisdiction over Plaintiffs' claims brought under state and city law pursuant to 28 U.S.C. § 1367.

6.      Venue is properly laid in the Southern District of New York because a substantial part of the events and omissions giving rise to the claims set forth herein occurred in this District.

## PARTIES AND REFERENCED ENTITIES AND PEOPLE

7.      Haynes is the CEO and President of RIOC and has held that title full-time since in or about March 2021.  In this position, he works closely with the RIOC Board to ensure that the goals and objectives of RIOC are fulfilled.  Under his leadership, numerous improvements to Roosevelt Island have been made, including, but not limited to, renovating the Blackwell House, restoring the Southpoint Park Shoreline, replacing the Seawall Railing, restoring the Motorgate parking garage, restoring the Lighthouse Tower and Park, renovating the Roosevelt Island Youth Center, renovating the Sportspark Complex, dedicating the FDR Hope Memorial, completing the Tram Elevator Project, and securing funding for the Riverwalk Building 9 project – a total cost of approximately $76M.  He first joined RIOC to serve as RIOC's Chief Operating Officer in or about April 2016.  Haynes was appointed to the role of Acting President on or about June 19, 2020, when

the prior CEO and President, Susan Rosenthal ("Rosenthal"), was terminated by the Chamber following an investigation by the New York State Office of Employee Relations ("OER" and formerly the Governor's Office of Employee Relations (GOER)), which revealed numerous instances in which Rosenthal spoke to subordinates using racist and sexually inappropriate language.  On or about March 16, 2021, the RIOC Board appointed Haynes to the permanent position of CEO and President of RIOC.

8.      Robinson is the Vice President and General Counsel of RIOC.  She joined the New York State Government in or about January 2015, when she became the Compliance & Internal Controls Officer for RIOC.  In or about June 2018, Robinson served as Senior Counsel to the Empire State Development Corporation's Division of Minority and Women's Business Development (the "Division"), where she advised the Division on policy matters and proposed legislation that would affect the Minority and Women-owned Business Enterprise ("MWBE") Program.  She also advised other agencies and public benefit corporations around the state on MWBE matters and defended the Division in administrative appeals.  Robinson returned to RIOC in or about August 2019 to serve as Vice President and General Counsel.

9.      The Chamber advances the Governor's policy initiatives and agenda and oversees government operations.  The Chamber includes the Counsel and Assistant Counsel to the Governor.  The Chamber is involved in all aspects of hiring RIOC administrative staff.  The Chamber is involved in terminating the employment of RIOC executives and employees and provides Haynes and Robinson with directives on various issues.

10.     New York State Homes & Community Renewal ("HCR") is the New York State affordable housing agency that is charged with developing, preserving, and protecting affordable housing and investing in communities.  HCR ex officios on the RIOC Board closely consult with

the Chamber on a regular basis with respect to RIOC and provide Haynes and Robinson with directives on various issues.

11.     NYSIG has jurisdiction over, among other things, New York State public benefit corporations.   NYSIG's functions and responsibilities include receiving and investigating complaints concerning allegations of corruption, fraud, criminal activity, conflicts of interest or abuse in any entity under its jurisdiction.

12.     OER is the New York State entity charged with investigating complaints of employment-related protected class discrimination in agencies and departments over which the Governor has executive authority.

13.     The New York State Commission on Ethics and Lobbying in Government (the "Commission on Ethics and Lobbying in Government," and formerly known as the Joint Commission on Public Ethics (JCOPE)) was created to restore public trust in government by ensuring compliance with the State's ethics and lobbying laws and regulations.  It has jurisdiction over, among other things, New York State public benefit corporations.  The Commission on Ethics and Lobbying in Government provides information, education, and advice regarding ethics and lobbying laws and promotes compliance through audits, investigations, and enforcement proceedings.

14.     The New York State Department of Human Rights ("NYSDHR") is the State agency charged with enforcing New York State's Human Rights Law.

15.     The Office of the New York State Comptroller (the "Comptroller") is responsible for, among other things, providing independent fiscal oversight on State and local finances.

16.     RIOC is a New York State public benefit corporation responsible for operating Roosevelt Island, New York.

17.     The RIOC Board governs RIOC and, pursuant to RIOC's enabling legislation, the Board is to be composed of nine members, including the Commissioner of the New York State Division of Housing and Community Renewal (or his or her designee), who serves as the Chair; the New York State Budget Director (or his or her designee); and seven public members appointed by the Governor with the advice and consent of the Senate.  The RIOC Board sets RIOC policy and is responsible for the business affairs of RIOC.

18.     Elizabeth Fine ("Fine") serves as Counsel to Governor Kathleen Hochul and works in the Chamber.

19.     Defendant Maldonado serves as Assistant Counsel to Governor Hochul and works in the Chamber.  Because of his background in housing policy, his portfolio of assignments includes the Governor's oversight of RIOC matters.  He regularly holds check-in meetings with Robinson and provides her with directives on various issues.

20.     Defendant Dissanayake serves as Deputy Secretary for Housing for New York State and works in the Chamber.  She regularly holds check-in meetings with Haynes and Robinson and provides them with directives on various issues.

21.     Simonida Subotic ("Subotic") is the former Deputy Secretary for Economic Development and Housing and worked in the Chamber.

22.     R. Nadine Fontaine ("Fontaine") is the former First Assistant Counsel to former Governor Andrew Cuomo and worked in the Chamber.

23.     Valerie Lubanko ("Lubanko") is a former Assistant Counsel to former Governor Cuomo and worked in the Chamber.

24.     Carrie Bronsther ("Bronsther") serves as the Assistant Secretary of Financial Services & Technology and previously served as Senior Policy Advisor.  She works in the Chamber.

25.     Bella Satra ("Satra") serves as Assistant Counsel to Governor Hochul and works in the Chamber.

26.     Pei Pei Cheng ("Cheng") serves as Assistant Counsel to Governor Hochul and works in the Chamber.

27.     Robert Megna ("Megna") serves as the Director of the New York State Division of Budget.  He also serves as an ex officio member of the RIOC Board.

28.     Erica Levendosky ("Levendosky") serves as Budget Examiner in the New York State Division of Budget.  She is also a RIOC Board Member.  In her role, she represents Megna on the RIOC Board.  She is also a RIOC Board Audit Committee Member.

29.     Jason Gough ("Gough") serves as the Deputy Communications Director in the Office of Governor Hochul.

30.     Defendant Visnauskas is the Commissioner and CEO of HCR.  She also serves as an ex officio member of the RIOC Board and serves as the Chair of the RIOC Board.  Through her role in HCR, she reports to Defendants Dissanayake and Maldonado.

31.     Defendant Lopez is the Senior Vice President and General Counsel for HCR.  She also serves as the RIOC Board Chair Representative on the RIOC Board.  In her role, she represents Defendant Visnauskas on the RIOC Board.  Through her role in HCR, she reports to Defendants Dissanayake and Maldonado.

32.     Defendant Valella serves as Vice President and Deputy Counsel in HCR and served as RIOC's Board Chair Representative before Defendant Lopez's appointment by Defendant

Visnauskas on or about December 6, 2022.  Through his role in HCR, he reports to Defendant Maldonado.

33.     John O'Reilly ("O'Reilly") is a former Chief Financial Officer of RIOC.  He was terminated for cause in or about August 2022.

34.     Arthur Eliav ("Eliav"), Erica Spencer-El ("Spencer-El"), Karline Jean ("Jean"), Amy Smith ("Smith"), and Jessica Cerone ("Cerone", and together with Eliav, Spencer-El, Jean, and Smith, the "Former Employees") are former employees of RIOC.  Many of the Former Employees had a reputation for filing unsubstantiated complaints and all of them have been either terminated for cause (Eliav and Spencer-El) or laid off as part of a RIOC reorganization plan sanctioned by the Chamber, the RIOC Board, and OER, and reviewed in advance by outside labor counsel (as to Jean, Smith, and Cerone).

35.     Gerrald Ellis ("Ellis") serves as Assistant Vice President and Deputy General Counsel of RIOC.

36.     Ben Fhala ("Fhala") serves as RIOC Board Member.  The New York State Senate confirmed his nomination on or about June 9, 2023.  Fhala is a White male.

37.     Lydia Tang ("Tang") serves as RIOC Board Member.  The New York State Senate confirmed her nomination on or about June 9, 2023.

38.     New York State Senator Liz Krueger ("Senator Krueger") is the state senator for the 28th Senate District, which includes Roosevelt Island.

39.     New York State Assemblymember Rebecca A. Seawright ("Assemblymember Seawright") is the state assemblymember for the 76th Assembly District, which includes Roosevelt Island.

40.     David Stone ("Stone") is a local blogger.

**FACTUAL ALLEGATIONS**

I.    **Haynes's Ascension to RIOC CEO and President Caused a Racist and Defamatory Backlash.**

41.    Haynes's rise to power in becoming CEO and President of RIOC was historic as very few African Americans have held such positions in the RIOC hierarchy.  Unfortunately, after Rosenthal was fired, Haynes and other African American RIOC executives, including Robinson, have received an unprecedented level of scrutiny and hostility because of their race.

42.    Many members of the Roosevelt Island Community were outraged by Rosenthal's ouster and unfairly blamed Haynes for it.

43.    One of the loudest voices of outrage has been Stone.  Since Haynes replaced Rosenthal, Stone has written several baseless articles about RIOC's staff and executives, often using racially charged language.  By backlinking (*i.e.*, providing hyperlinks to old articles in new articles), Stone was able to amplify engagement with his negative articles, posted among several social media accounts.

44.    Since Haynes took over in June 2020 through June 2023, Stone has posted approximately 21 articles per month about RIOC.  Haynes has been in his role of Acting and Permanent CEO and President of RIOC for approximately three years, or approximately 750 business days.  Of those approximately 750 days, Stone has posted 532 articles about him, 98% of which were negative and/or demonstrated racial animus.  In that same time, Stone posted 83 articles about Robinson, 84% of which were negative.  For comparison, from 2016 through June 2020 (during Rosenthal's tenure), Stone wrote approximately 1 article per month about RIOC, 2% of which were negative.  Moreover, although less than half (7 out of 22 or 32%) of the RIOC staff mentioned in Stone's articles are African American, more than half (approximately 56%) of the posts negatively mention the African American staff.

9

45.     The racist backlash Stone has expressed has been supported by local elected officials who were either allies of Rosenthal or allies to supporters of Rosenthal, namely Senator Krueger and Assemblymember Seawright.  Assemblymember Seawright has endorsed Stone's racist articles on her social media accounts in the past, she pays to advertise on his blog, and has also published Stone's articles in her constituent newsletters.  Senator Krueger has taken an interview with Stone and has even posed for a photo with him.  Since this endorsement and validation, Stone has been quoted in the New York Times, Crain's Business New York, and Business Insider.

46.     As a result of this racist backlash – which never existed during the prior RIOC administrations run by White individuals – and the fact that Haynes and Robinson – as more fully described below – were not allowed to take any steps to protect their reputations as well as that of RIOC's, Haynes and Robinson and the other RIOC minority executive staff were subject to a hostile work environment, discrimination, and retaliation in that every action taken by them as RIOC executives was scrutinized, depicted in the most unfavorable light, unfairly investigated by state governmental entities as well as a law firm, and they, as a result of the Defendants' actions and indifference, were rendered completely helpless.  Indeed, this was blatantly disparate treatment as none of the RIOC administrations run by White individuals had ever encountered such treatment.

## II.     Haynes's and Robinson's Complaints of Discrimination Have Gone Ignored and Their Attempts at Fighting Back Against Defamatory Statements Have Been Thwarted.

47.     The pervasive continuous racially hostile articles directed at Haynes and Robinson, and sanctioned by public officials dominated the workplace environment, and led to harassment which resulted in low morale and unwarranted investigations.

48.     Haynes and Robinson have complained to the Chamber about the hostile racial climate as far back as in or about October 2020.

49.     On or about October 13, 2020, Haynes emailed the Chamber – specifically Subotic, Fontaine, Lubanko, and Bronsther – to complain about Stone's disparaging comments about RIOC's minority executives and staff.  Haynes continued to make similar complaints throughout his tenure as CEO and President to Defendants Dissanayake and Maldonado, as well as Satra.

50.     RIOC's executive staff periodically sent the Chamber weekly reports (so-called "Red/Green Reports") that would flag problems (red flags) and upcoming meetings (green flags). Through these reports, RIOC's minority executives complained to the Chamber regarding the hostile racial climate.

51.     For example, on or about January 13, 2022, the Red/Green Report informed the Chamber that Stone had posted an article confirming that he had filed a complaint to NYSIG about outside activities of Haynes from 2018.  This report further explained to the Chamber that Stone said he would continue to file more NYSIG complaints because of his displeasure with the RIOC executives.

52.     On or about January 25, 2022, the Red/Green Report informed the Chamber that Stone had filed or threatened to file multiple complaints with state agencies.  Despite this revelation in the Red/Green Report, and Haynes's and Robinson's prior complaints about the racist campaign against them based on specious allegations, there are still many of these state investigations into Haynes's and RIOC's management that remain open.

53.     On or about February 1, 2022, the Red/Green Report informed the Chamber that RIOC intended to engage outside counsel and a crisis management team to advise RIOC on how to best address Stone's targeted attacks against RIOC's minority executives and staff.  This report

also noted that Stone's attacks and barrage of FOIL requests and complaints have negatively affected employee productivity and morale.  The Red/Green Reports to the Chamber on or about February 15, 2022, February 24, 2022, March 15, 2022, and March 29, 2022 provided the same information to the Chamber regarding Stone and his impact on RIOC staffers' morale.

54.     Plaintiffs even compiled a dossier of Stone's articles to measure how frequently he disparaged RIOC minority executives.

55.     Haynes and Robinson also informed the Chamber that due to the added stress caused by the articles and the reaction to the articles, some of the RIOC minority executives have sought therapy, some staff has resigned, and some staff have been unwilling to accept promotions due to fear of public backlash.  Haynes and Robinson also expressed how the hostile climate made it challenging to attract and retain talent, as concerns of interviewees were often raised during interviews.

56.     To date, the Chamber has done nothing to assist RIOC's minority executives and staff, and, in fact, has aided and abetted the racist campaign against Haynes, Robinson, and the RIOC minority executives and staff.

57.     For example, on or about February 11, 2022, Defendant Dissanayake and Satra directed Haynes and Robinson to "stand down" and not circulate the dossier they created on Stone's articles.  Defendant Dissanayake and Satra further instructed Haynes and Robinson not to contact outside counsel for legal advice or crisis management advice regarding Stone.

III.    **Haynes and Robinson Have Been Discriminated Against and Retaliated Against through the Continuous Use of Unsubstantiated Allegations of Misconduct as a Basis for Baseless and Unwarranted Investigations.**

58.     From when Haynes was officially appointed CEO and President in or about March 2021 through the beginning of in or about March 2022, State agencies, including NYSIG, OER, the Commission on Ethics and Lobbying in Government, and NYSDHR have launched no fewer

than ten (10) inquiries and investigations into alleged wrongdoing by the RIOC management and Haynes and Robinson specifically.  Despite the frivolous nature of the allegations – most were initiated in response to allegations by Stone or the Former Employees – all but one of the NYSIG investigations remains open.  These types of investigatory inquiries rarely occurred during the 4.5 years that both Haynes and Robinson reported to Rosenthal.

59.    An additional investigation by the New York State Comptroller was announced on April 4, 2023, the same day Crain's Business New York published an article criticizing the RIOC executive staff, which included Haynes and Robinson.  The Comptroller informed Haynes and Robinson via email of its intent to conduct the audit based on allegations of wrongdoing outlined in the pending lawsuit filed by some of the Former Employees in which they allege to have filed a complaint with said agency back in 2021.  This was the first time RIOC executives had been contacted by the Comptroller for this purpose.

**IV.    The Chamber's Directive to Haynes and Robinson to Do Nothing and Decision to Conduct an Unprecedented Investigation.**

60.    The discriminatory investigations reached a new low in or about March 2022.

61.    On or about March 26, 2022, the Former Employees published an open letter, referred to as the #NYSWeDeserveBetter open letter, accusing RIOC executive staff, including Haynes and Robinson, of serious wrongdoing, including, but not limited to, accepting kickbacks, abuse of power, cronyism, and promoting a toxic work environment.

62.    Despite the Former Employees' reputations for filing unsubstantiated complaints, the Chamber instructed Haynes and Robinson to take a similar do-nothing approach – as they were instructed to with Stone's attacks – in response to the press inquiries regarding the #NYSWeDeserveBetter open letter.

63.     On or about April 5, 2022, Gough instructed Haynes and Robinson to say: "The Roosevelt Island Operating Corporation has received this letter, which has been forwarded to the NYS Inspector General's office as well as Governor's Office of Employee Relations for their review.  RIOC has no further comment at this time."  Gough also instructed Haynes and Robinson to keep him posted regarding additional inquiries.

64.     The Chamber also prevented Haynes and Robinson from pursuing a litigation strategy that would have actively challenged individuals who were defaming RIOC.  After some of the Former Employees filed a lawsuit against RIOC in or about February 2023, Robinson engaged outside counsel to file a countersuit for defamation on behalf of RIOC.  This act, however, was met with a stern phone call from Defendant Maldonado to Robinson on or about March 30, 2023, scolding her for filing the defamation counterclaim without first consulting the Chamber. The Chamber took the position that RIOC should never have filed the counterclaim, notwithstanding the frivolous and defamatory of the complaints.

65.     On or about April 26, 2023, Defendants Lopez and Visnauskas had a call with Haynes and directed him to dismiss the defamation counterclaim.  This directive was not communicated to the rest of the RIOC Board, went against the consensus of the RIOC Board who wanted it filed, and it also violated RIOC's bylaws.

66.     Notwithstanding the complete lack of support, Haynes and Robinson continued to try to work with the Chamber and other state agencies to address the toxic racially charged work environment.  After the Former Employees published the #NYSWeDeserveBetter open letter on or about March 26, 2022, Robinson reported the #NYSWeDeserveBetter open letter to NYSIG for further review on or about April 1, 2022.

67.     The Chamber's and RIOC Board's response to the allegations in the #NYSWeDeserveBetter open letter was unprecedented.  Wholly separate from the normal NYSIG reporting and investigation process, in the weeks following the publication of the #NYSWeDeserveBetter open letter, Defendant Valella, with the support of some RIOC Board Members, considered hiring a law firm to independently investigate the practices and procedures of RIOC management.  The push to hire a law firm, however, was led by the Chamber through Satra, and Defendants Dissanayake and Valella.  The Chamber and Defendant Valella pushed to hire a law firm despite the expected cost of an independent investigation (likely hundreds of thousands of dollars), the risk of interfering with the ongoing NYSIG investigations, and the fact that this was an unprecedented step.  Haynes and Robinson also made a presentation to the Chamber and the RIOC Board that provided background information on the Former Employees, namely their motive to ruin Haynes's and Robinson's professional reputations, and the fact that they were well known to the Chamber and the RIOC Board as being disgruntled.

68.     Ultimately, the RIOC Board's Audit Committee decided at the June 23, 2022 RIOC Board meeting to hire a prominent, global law firm (the "Law Firm") to investigate the practices and procedures of RIOC management.  The Law Firm was formally engaged on or about September 2, 2022.

69.     Defendant Valella was consulted in the drafting of the engagement letter, and Defendant Valella authorized the engagement letter's approval.  Defendant Valella has also received updates during the investigation.  This is notable because Defendant Valella does not serve on the RIOC Board's Audit Committee, let alone the RIOC Board as his role of ex officio ended in December 2022 upon the appointment of Defendant Lopez as the new proxy for Defendant Visnauskas.

70.     The decision to hire outside counsel to investigate alleged wrongdoing was a stark departure from how allegations of wrongdoing by RIOC management had been handled in the past.  For example, following a complaint in March 2012 to NYSIG alleging kickbacks and other ethics violations by the Vice President of Operations for RIOC, NYISG — not outside counsel — conducted a sweeping investigation that also uncovered wrongdoing by other RIOC executives. Another example: outside counsel was not engaged to investigate the allegations of racism against Rosenthal in or about June 2020.  Finally, outside counsel was not engaged to investigate the wrongdoing of O'Reilly, who was terminated for cause in or about August 2022 after it was revealed he was drinking alcohol while on the job and golfing while he claimed to be working from home (ultimately stealing approximately 56 days in time).

71.     The circumstances surrounding the termination of O'Reilly further underscore how Haynes and Robinson have been disparately treated.  NYSIG declined to pursue corrective action and closed that case without any findings, recommendations, or reports, despite being presented with years of evidence in the form of emails and receipts of O'Reilly's golf outings during work hours, video footage of O'Reilly on the golf course on a day he claimed to work from home, and weeks of evidence tracking O'Reilly's RIOC-issued phone during business hours.  Juxtapose that with the numerous, still ongoing NYSIG investigations of Haynes and Robinson, all of which were launched on completely baseless allegations from sources lacking credibility (*e.g.*, Stone and the Former Employees).

72.     In addition, prior to the termination of O'Reilly's employment, Defendant Dissanayake and Satra prevented Haynes from suspending O'Reilly notwithstanding the overwhelming evidence against him.  This further demonstrates the Chamber's involvement in employment decisions of RIOC.

73.    On or about September 2, 2022, Robinson signed a retainer agreement with the outside Law Firm to conduct the unprecedented investigation.

74.    For approximately the next seven months, the Law Firm interviewed numerous employees and reviewed many personnel files, documents, emails, and reports.

**V.    The Sanitization of the Report to Cover Up the Findings of Discrimination.**

75.    Approximately one (1) year has passed since the Law Firm was formally engaged, and its findings have still not been released publicly, notwithstanding the relentless public scrutiny of Haynes and Robinson.

76.    By on or about January 31, 2023, in a conversation with Robinson, a RIOC Board Member confirmed that the scope of the investigation had expanded from focusing on RIOC Management's processes to the allegations against Haynes and Robinson in the #NYSWeDeserveBetter open letter.  The RIOC Board Member confirmed that Defendant Valella was heavily involved in the investigation, and he was running the investigation through the Chamber.  The RIOC Board Member also confirmed that an attorney from the Law Firm involved in the investigation had confirmed that most, if not all, of the allegations lodged by blogger Stone against Haynes (and the subject of an NYSIG investigation) were completely meritless.

77.    On or about April 5, 2023, Defendants Lopez and Visnauskas emailed Robinson and Haynes instructing them not to speak with RIOC Board Members without Defendants Lopez and Visnauskas present because "they don't feel comfortable" with Haynes and Robinson speaking directly to the RIOC Board, notwithstanding that no RIOC Board Chair or RIOC Board Chair Representative had ever previously taken such a position.

78.    On or about April 7, 2023, Haynes (copying Robinson) emailed Defendants Visnauskas, Lopez, and Valella, putting them on notice that Assemblymember Seawright was publicly advancing a false narrative about RIOC executive staff and how that narrative – combined

with the Crain's article – has become extremely disruptive to operations.  Haynes forwarded the email to Defendants Dissanayake and Maldonado later that day.

79.     On or about April 7, 2023, Robinson spoke with two deputy inspector generals of NYSIG about the Law Firm's report.  The deputy inspector generals were surprised to discover that RIOC's General Counsel was not the actual client with respect to the Law Firm's retention.

80.     On or about April 14, 2023, after being interviewed in connection with the investigation, a White RIOC Board Member told the lead attorney from the Law Firm that they needed to "end this f****** racist witch hunt now" and that "Shelton [Haynes] is the best executive [of RIOC] so far."  The RIOC Board Member acknowledged that some people had not liked Haynes since day one.  The RIOC Board Member also accused Assemblymember Seawright of buying into false assumptions about Haynes, and said that if Haynes decided to sue, "things would get ugly" because elected officials would be "dragged into this" and they would be on the "wrong side" because they do not know what they are talking about, and that Haynes "crosses his 'T's and dots his 'I's."

81.     Also, in or about April 2023, NYSIG contacted the Law Firm to obtain a copy of the report.  NYSIG was told that the report is privileged and would not be disclosed.

82.     On or about April 26, 2023, Haynes (copying Robinson) emailed Defendants Maldonado and Dissanayake complaining about the toxic, negative, and racially charged environment they have had to work in as well as the false and defamatory claims made against the RIOC staff.  Haynes also requested public exoneration in the form of a public meeting and written statement from the RIOC Board and the Chamber at the conclusion of the Law Firm's investigation.

83.     Instead of doing something to address the racism that Haynes and Robinson have suffered and complained about, the only solution has been to offer Robinson a new job after the Chamber was made aware of the original report's findings of innocence and the ongoing racially hostile work environment on Roosevelt Island.

84.     On or about May 22, 2023, Robinson received a call from Cheng and Defendant Maldonado for the purpose of a wellness check.  On that call, Robinson was offered the opportunity to move to another position.  Taking any of the positions that they discussed would effectively be a demotion, because there were no general counsel positions available downstate, and all the positions have a lower salary and less responsibility than Robinson's current position.  She was also told that Fine knew all about the stressful and racially charged environment on the Island.

85.     By on or about May 24, 2023, the Law Firm had drafted a report detailing its findings and conclusions.  The first draft of the report cleared Haynes and Robinson of wrongdoing.  The first draft also included findings that confirmed and supported Haynes's and Robinson's claims of racial discrimination.  However, the first draft was never released – not even to the RIOC Board.  Instead, at some point before the May 2023 Board Meeting, Defendants Lopez and Valella instructed the Law Firm to remove and sanitize all findings in the report that confirmed and supported Haynes's and Robinson's accounts of the racial discrimination that they have experienced.

86.     The Law Firm presented the second draft of the report to the RIOC Board during executive session on or about May 25, 2023.  The second draft that the RIOC Board received indicated that it was a second draft—and did not contain the findings concerning the discrimination against Haynes and Robinson.  During this RIOC Board meeting, the Law Firm also presented a

PowerPoint to the RIOC Board that carefully outlined the findings of racial discrimination against Haynes and Robinson that were originally contained in the unsanitized first draft of the report.

87.     The fact that the report was sanitized before the RIOC Board ever received a draft all but confirms that the Chamber, rather than the RIOC Board Audit Committee, exercised actual control over the Law Firm's investigation and report.

88.     On or about May 31, 2023, a RIOC Board Member told Haynes that a version of the report was being reviewed in Albany with ex officios, and that the plan was to publicly release the report in or about June 2023.

89.     At the June 29, 2023 RIOC Board meeting, discussion about publicly releasing the report was thwarted by Defendant Lopez, who claimed that due to a "challenge" to the report, she would not engage in any further discussion of the report with the RIOC Board.  Defendant Lopez did not reveal that the "challenge" she referenced was a litigation hold notice sent by Plaintiffs' counsel on or about June 16, 2023.

90.     Individuals closely connected to and with intimate knowledge of the first unsanitized draft of the Law Firm's report were very apologetic and disturbed that the findings that confirmed and supported Haynes's and Robinson's discrimination claims were removed from the second draft.  These individuals encouraged Haynes and Robinson to file a discrimination lawsuit.

## VI.     The Chamber's Interference with Haynes's and Robinson's Execution of Their Duties and Responsibilities Constitutes Discrimination and Retaliation and Contributed to a Hostile Work Environment.

91.     It is an integral part of the job of any CEO to have input into the board's composition as those individuals are the ones that the CEO and General Counsel will have to frequently work with to successfully guide an organization.

92.     In past RIOC administrations (with White CEOs at the helm), the general practice of selecting, nominating, and appointing new RIOC Board Members always included working with the RIOC CEO and President and General Counsel to identify potential candidates.  The Chamber circumvented that process once RIOC was under the leadership of an African American CEO and President and General Counsel.

93.     Since Haynes took over, it has been the clear intent of Defendants to undermine Haynes's and Robinson's authority and ability to discharge their job functions by appointing new board members who are antagonistic to Haynes and Robinson.  Haynes and Robinson have been disparately treated and excluded from the selection of new RIOC Board Members, having only been informed of their selections after the fact.  This departure from prior practice has also been retaliatory, as it was the result of Haynes and Robinson complaining about racial discrimination, and it has contributed to a racially hostile work environment.

94.     Despite several requests by Haynes for the names of new potential RIOC Board Members, the Chamber worked closely with elected officials (namely Senator Krueger and Assemblymember Seawright) to add new RIOC Board Members without telling Haynes and Robinson.  Through rumors, Haynes and Robinson learned of the three people being floated as new RIOC Board Members.

95.     The rumors were confirmed on or about May 17, 2023, when the Chamber emailed Robinson to draft recusal memos for two of the proposed new members (Fhala and Tang) to "resolve" conflicts of interest concerns.  The email was sent by the Assistant Appointments Counsel in the Governor's Appointment Office at the behest of Defendant Maldonado, who was copied on the email.  Defendant Maldonado – who oversees RIOC matters for the Governor's office, including appointments of RIOC Board Members – had requested the Assistant

Appointments Counsel contact Robinson because Assistant Appointments Counsel had a question for the ethics officer of RIOC (who is Robinson in her role as general counsel).

96.     On or about May 17, 2023, Robinson voiced concerns about the two potential RIOC Board Members' conflicts of interest, but the Chamber insisted that Robinson draft recusal memos, and gave Robinson very short notice in drafting the memos.  On or about May 18, 2023, Defendant Maldonado clarified the instructions to Robinson, but reiterated the directive.   Defendant Maldonado also reiterated the directive to Robinson in multiple phone calls in or about mid-to-late May 2023, which included Defendant Maldonado putting Robinson in contact with another state-level ethics attorney to assuage her concerns about the potential conflicts of interest.

97.     The three new RIOC Board Members were confirmed by the New York State Senate on or about June 9, 2023.

98.     Further evidence of the interference with and undermining of Haynes's and Robinson's discharge of their duties and responsibilities is that Defendant Lopez has also prevented two already-serving RIOC Board Members – long-tenured African American RIOC Board Members who are supportive of Haynes and Robinson – from serving on RIOC Board committees.   Neither of these RIOC Board Members condone the unfair and discriminatory treatment of Haynes and Robinson.

99.     On or about April 26, 2023, Haynes emailed Defendants Visnauskas, Lopez, and Valella asking to add these two African American RIOC Board Members to the Operations Advisory Committee given their in-depth knowledge of RIOC and the Roosevelt Island community.

100.     Defendant Lopez rejected the request, claiming that since two (2) new Board Members were anticipated to join RIOC, the Board should "hold off."

101.    On or about May 31, 2023, one of the two African American RIOC Board Members sent an email to the entire RIOC Board inquiring about the status of the vacancy on the Operations Advisory Committee.

102.    On or about June 1, 2023, the second African American RIOC Board Member emailed the entire RIOC Board to express the need for the Operations Advisory Committee to meet.

103.    On or about June 15, 2023, Robinson received an email from Appointments stating that the second African American RIOC Board Member who sent the June 1st email had been removed and replaced with another individual.  Haynes and Robinson only found out about this change via email.  The removal letter attached to the email (backdated to June 9, 2023), said that this second African American RIOC Board Member was being removed because his term was expiring.  While this second African American RIOC Board Member's appointment to the RIOC Board had expired in 2021, the Chamber allowed two White men to remain on the RIOC Board even though both of their terms expired over thirteen (13) years ago.  And, of important note, this second African American RIOC Board Member never received a copy of that letter or any notification of his removal.

104.    On or about June 16, 2023, the Chamber and HCR received a letter from Plaintiffs' counsel requesting a litigation hold citing racial discrimination and retaliation.

105.    On or about June 20, 2023 (after the Juneteenth holiday), the second African American RIOC Board Member received a call from Appointments claiming that a "clerical error" had been made in his removal, and that they were trying to reinstate him.  However, the reinstatement is not scheduled to occur until January 2024, when the New York State Senate reconvenes.  Neither Defendant Lopez nor any of the Chamber's liaisons who work with Haynes

and Robinson notified Haynes or Robinson of this "clerical error."  Moreover, none of the other RIOC Board Members were informed of this error, and when asked by Haynes about the circumstances surrounding the removal, Defendant Lopez initially claimed to know nothing about it.  But when pressed further, she admitted that a "clerical error" had in fact occurred.  Defendant Lopez further explained to Haynes that she thought it was a mistake by the Governor's Appointment Office and that Haynes should follow up with Defendants Maldonado and Dissanayake.

106.    On or about July 7, 2023, Fhala – who was appointed to the RIOC Board without consulting Haynes or Robinson – sent an email request to Defendant Lopez, Levendosky, and Ellis requesting that he be added to the Audit Committee, and he asked to create a new committee for transportation and parking, excluding both Haynes and Robinson from the email.

107.    On or about July 10, 2023, Defendant Lopez approved Fhala's request, and asked Ellis to draft the appointment letters for her signature without Haynes or Robinson being aware. Ellis, who reports to Robinson, made Haynes and Robinson aware.  Haynes then contacted Defendants Visnauskas, Lopez, and Valella to express concern over the matter.

108.    On other occasions, Fhala has ignored the practice of how a RIOC Board Member should contact stakeholders.  For example, on or about July 7, 2023, he contacted the Metropolitan Transit Authority ("MTA") to discuss various topics and explore potential transit solutions involving Roosevelt Island without first discussing the topics with Haynes.  On or about July 10, 2023, MTA responded to Fhala, informing him that he should have a discussion with RIOC executive leadership and RIOC Acting Chief Operating Officer to make sure that RIOC is speaking in one accord.

109.    Fhala has also been copying Senator Krueger's staff on communications with stakeholders rather than Haynes or Robinson, which is contrary to prior practice.

110.    On another occasion, on or about July 18, 2023, during the welcome session for new RIOC Board Members, Haynes and Robinson had to explain to Fhala that it was inappropriate for him to directly contact sister agencies and other RIOC staff without first reaching out to Haynes.

111.    On another occasion, on or about July 31, 2023, Fhala sent an email about matters pertaining to the upcoming RIOC Board meeting to the RIOC Board, Haynes, Robinson, the RIOC Legal Department, Senator Krueger, and Assemblymember Seawright, as well as Defendants Maldonado, Dissanayake, and Valella.   In the email, Fhala wrongfully accused Robinson of deliberately delaying the upcoming RIOC Board meeting.  Moreover, Fhala breached the general practice of not sending emails pertaining to internal RIOC Board matters to non-RIOC parties (*e.g.*, elected officials).

112.    At the subsequent RIOC Board meeting, on or about August 7, 2023, Fhala accused Haynes of blocking his appointment to committee positions.   Fhala accused Robinson of misrepresenting the RIOC Board by-laws to prevent him from being appointed to committee positions.   During that meeting, Fhala acted in an antagonistic manner, was rude and condescending, tones that were noted by other people present.  Robinson openly expressed concern about Fhala's conduct, and questioned his ability to maintain confidentiality and not share sensitive information with elected officials and other members of the public.

113.    On or about August 10, 2023, the Acting Chief Operating Officer of RIOC forwarded an email from Fhala to Haynes and Robinson.  Fhala had emailed "urgent" concerns to various stakeholders and elected officials, but he omitted Haynes and Robinson from the email.

The Acting Chief Operating Officer noted that she was concerned about Fhala's behavior as it "seem[ed] to involve disruptions and communications with internal and external parties." She also noted that his actions "appear[ed] erratic and unpredictable" and have "the potential to generate confusion amongst various stakeholders."

114.   Also, on or about August 10, 2023, Fhala emailed Defendant Lopez, copying Defendant Visnauskas, Defendant Valella, Robinson and other staff in RIOC's Legal Department. Fhala made his position clear that he did not believe he was under an obligation to keep internal RIOC matters confidential, and he asked for Defendant Lopez's legal guidance. In response to that email, later that day, Haynes emailed Robinson and Defendants Visnauskas, Lopez, Valella, Dissanayake, and Maldonado to complain about Fhala's disrespectful and condescending behavior.

115.   Despite being instructed otherwise, Fhala continues to flout the norms and procedures all RIOC Board Members are to abide by. Fhala also continues to communicate with Haynes and Robinson in an antagonistic manner. For example, in an August 28, 2023 email that included the entire RIOC Board, Haynes, Robinson, and Defendants Lopez, Valella, and Visnauskas, Fhala likened Haynes's prior responses on MTA issues as "2 months of running in circles."

116.   In another example, Fhala and Tang – who was also appointed to the RIOC Board without consulting Haynes or Robinson – both disregarded the norms for conduct of a RIOC Board Member and criticized Haynes. After receiving an inquiry from a local blogger that referred to a privileged and confidential legal memo drafted by Robinson, Haynes, on August 28, 2023, emailed the RIOC Board and other stakeholders asking for information about how the memo was divulged. Tang replied later that day to confirm she divulged the memo to the local blogger. Tang, in her

email, went on to criticize the RIOC executive team, calling out Haynes for needing to "figure out how to work smarter."  Fhala replied to Tang's email on August 29, 2023 to agree with Tang and further criticize and demean Haynes:

> Shelton, given your keen attention to not being responsive to board members, I'd like to remind you: you work at the pleasure of the board.   It seems a refresher in understanding your role and responsibilities is needed. Dianna/Alex, could you assist in organizing training for Shelton? This would help him better understand his obligations to the residents of this island and to this oversight board.

**VII.    The Racial Discrimination Has Harmed Haynes's and Robinson's Health.**

117.    As a result of the racist backlash and being rendered completely helpless by Defendants' actions and indifference, Haynes has experienced undue stress that has caused his health to deteriorate.

118.    As a result of the racist backlash and being rendered completely helpless by Defendants' actions and indifference, Robinson has experienced undue stress that has caused her health to deteriorate.

**FIRST CAUSE OF ACTION**
**(Race Discrimination in Violation of 42 U.S.C. § 1983)**
**(Against All Defendants )**

119.    Plaintiffs repeat and reallege the allegations in paragraph 1 – paragraph 118 as if fully set forth herein.

120.    Defendants, in their individual capacities, acting under color of law, custom or usage, discriminated against Plaintiffs on the basis of race in terms, conditions, or privileges of employment, thus depriving them of their rights under the Equal Protection Clause of the 14th Amendment to the Constitution of the United States.

121.    Plaintiffs, African Americans, are members of a protected group.

122.   Plaintiffs are qualified for their positions as CEO and President (Haynes) and General Counsel (Robinson) of RIOC.

123.   Plaintiffs have been subject to adverse actions including, among other things, Defendants undermining and interfering with Haynes's and Robinson's ability to perform their job functions as set forth in paragraphs 1 through 118.

124.   Defendants were personally involved in the discriminatory conduct.

125.   These adverse actions did not take place when Plaintiffs' predecessors, who were White, were employed at RIOC.   These adverse actions clearly give rise to an inference of discrimination.

126.   As a direct and proximate result of these actions, Plaintiffs suffered and continue to suffer actual damages, including monetary damages, damages to their reputation and career, emotional pain, mental anguish, and humiliation in an amount to be determined at trial.

127.   Defendants acted with malice and/or reckless disregard of Plaintiffs' rights and privileges as protected by federal law, and, as such, should be subjected to punitive damages to deter unlawful conduct similar to the conduct alleged herein.

**<u>SECOND CAUSE OF ACTION</u>**
**(Retaliation in Violation of 42 U.S.C. § 1983)**
**(Against All Defendants )**

128.   Plaintiffs repeat and reallege the allegations in paragraph 1 – paragraph 118 as if fully set forth herein.

129.   By the acts and practices alleged above, Defendants, in their individual capacities, under color of law custom or usage, have retaliated against Plaintiffs for having exercised their rights to oppose and seek redress for discrimination on the basis of race under the Equal Protection

Clause of the 14th Amendment to the Constitution of the United States, in violation of Section 1983.

130.     Plaintiffs engaged in protected activity when they opposed and complained of the racial discrimination they were being subjected to in emails or reports to RIOC and the Chamber.

131.     Defendants knew that Plaintiffs engaged in protected activity.

132.     Plaintiffs' engagement in their protected activity caused the materially adverse, and retaliatory, actions by Defendants, including, but not limited to, being excluded from the practice of selecting new RIOC Board Members, and having input before a RIOC Board Member – adverse to Haynes and Robinson – was appointed to a committee of his choosing.

133.     Defendants were personally involved in the retaliatory conduct.

134.     There was a causal connection between Plaintiffs' protected activities and the actions of Defendants.  Defendants subjected Plaintiffs to such actions because of and in retaliation for Plaintiffs' protected activities.

135.     As a direct and proximate result of these actions, Plaintiffs suffered and continue to suffer actual damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Hostile Work Environment in Violation of 42 U.S.C. § 1983)**
**(Against All Defendants)**

136.     Plaintiffs repeat and reallege the allegations in paragraph 1 – paragraph 118 as if fully set forth herein.

137.     By the acts and practices alleged above, all Defendants, in their individual capacities, under color of law custom or usage, have subjected Plaintiffs to a hostile work environment that violated their rights under the Equal Protection Clause of the 14th Amendment to the Constitution of the United States, in violation of Section 1983.

138.     Plaintiffs' workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of their employment and create an abusive working environment.

139.     Defendants were personally involved in creating and fostering the hostile work environment.

140.     Defendants knew, or should have known, about the hostile work environment and failed to take corrective action.

141.     As a direct and proximate result of these actions, Plaintiffs suffered and continue to suffer actual damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
**(Race Discrimination in Violation of NYSHRL, N.Y. Exec. L. §§ 290 *et seq.*)**
**(Against All Defendants)**

142.     Plaintiffs repeat and reallege the allegations in paragraph 1 – paragraph 118 as if fully set forth herein.

143.     RIOC and the Chamber are Plaintiffs' employers under the NYSHRL.  RIOC and the Chamber discriminated against Plaintiffs within the meaning of the NYSHRL, N.Y. Exec. L. §§ 290 *et seq.*, on the basis of race in terms, conditions, or privileges of employment.  Defendants aided and abetted the discrimination against Plaintiffs.

144.     Plaintiffs, African Americans, are members of a protected group.

145.     Plaintiffs are qualified for their positions as CEO and President (Haynes) and General Counsel (Robinson) of RIOC.

146.     Plaintiffs have been subjected to adverse actions including, among other things, Defendants undermining and interfering with Haynes's and Robinson's ability to perform their job functions as set forth in paragraphs 1 through 118.

147.     These adverse actions did not take place when Plaintiffs' predecessors, who were White, were employed at RIOC.   These adverse actions clearly give rise to an inference of discrimination.

148.     Defendants knew of, disregarded, and failed to take any corrective action in response to the discriminatory conduct of its administrators and participated in the discriminatory conduct.

149.     As a direct and proximate result of these actions, Plaintiffs suffered and continue to suffer actual damages, including monetary damages, damages to their reputation and career, emotional pain, mental anguish, and humiliation in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Retaliation in Violation of NYSHRL, N.Y. Exec. L. §§ 290, *et seq.*)**
**(Against All Defendants )**

150.     Plaintiffs repeat and reallege the allegations in paragraph 1 – paragraph 118 as if fully set forth herein.

151.     RIOC and the Chamber are Plaintiffs' employers under the NYSHRL.   RIOC and the Chamber retaliated against Plaintiffs for having exercised their rights to oppose and seek redress for discrimination on the basis of race.   Defendants aided and abetted RIOC's and the Chamber's retaliation against Plaintiffs.

152.     Plaintiffs engaged in protected activity when they opposed and complained of the racial discrimination they were being subjected to in emails or reports to RIOC and the Chamber.

153.     Defendants knew that Plaintiffs engaged in protected activity.

154.    Plaintiffs' engagement in their protected activity caused the materially adverse, and retaliatory, actions by Defendants, including, but not limited to being excluded from the practice of selecting new RIOC Board Members, and having input before a RIOC Board Member – adverse to Haynes and Robinson – was appointed to a committee of his choosing.

155.    There was a causal connection between Plaintiffs' protected activities and the actions of Defendants.  Defendants subjected Plaintiffs to such actions because of and in retaliation for Plaintiffs' protected activities.

156.    As a direct and proximate result of these actions, Plaintiffs suffered and continue to suffer actual damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**(Hostile Work Environment in Violation of NYSHRL, N.Y. Exec. L. §§ 290 *et seq.*)**
**(Against All Defendants)**

157.    Plaintiffs repeat and reallege the allegations in paragraph 1 – paragraph 118 as if fully set forth herein.

158.    By reason of the foregoing, Defendants aided and abetted in subjecting Plaintiffs to a hostile work environment within the meaning of the NYSHRL, N.Y. Exec. L. §§ 290 *et seq.*

159.    The environment of Plaintiffs' workplace was permeated with discriminatory behavior such that Plaintiffs were treated less well than other employees, and were subjected to inferior terms, because of their race.

160.    Defendants knew, or should have known, about the hostile work environment and failed to take corrective action.

161.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiffs suffered and continue to suffer actual damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
**(Race Discrimination in Violation of NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*)**
**(Against All Defendants )**

162.    Plaintiffs repeat and reallege the allegations in paragraph 1 – paragraph 118 as if fully set forth herein.

163.    RIOC and the Chamber are Plaintiffs' employers under the NYCHRL.  RIOC and the Chamber discriminated against Plaintiffs within the meaning of the NYCHRL, N.Y.C. Admin. Code §§ 8-101 *et seq.*, on the basis of race in terms, conditions, or privileges of employment. Defendants aided and abetted RIOC's and the Chamber's discrimination of Plaintiffs.

164.    Plaintiffs, African Americans, are members of a protected group.

165.    Plaintiffs are qualified for their positions as CEO and President (Haynes) and General Counsel (Robinson) of RIOC.

166.    Plaintiffs have been subjected to adverse actions including, among other things, Defendants undermining and interfering with Haynes's and Robinson's ability to perform their job functions as set forth in paragraphs 1 through 118.

167.    These adverse actions did not take place when Plaintiffs' predecessors, who were White, were employed at RIOC as the CEO and General Counsel.  These adverse actions clearly give rise to an inference of discrimination.

168.    Defendants knew of, disregarded, and failed to take any corrective action in response to the discriminatory conduct of its administrators and participated in the discriminatory conduct.

169.    As a direct and proximate result of these actions, Plaintiffs suffered and continue to suffer actual damages, including monetary damages, damages to their reputation and career, emotional pain, mental anguish, and humiliation in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL, N.Y.C. Admin. Code §§ 8-101 *et seq.*)
### (Against All Defendants )

170.    Plaintiffs repeat and reallege the allegations in paragraph 1 – paragraph 118 as if fully set forth herein.

171.    The NYCHRL prohibits an employer from retaliating against any employee who has engaged in any activity protected by the NYCHRL.

172.    RIOC and the Chamber are Plaintiffs' employers under the NYCHRL.  RIOC and the Chamber retaliated against Plaintiffs for having exercised their rights to oppose and seek redress for discrimination on the basis of race.  Defendants aided and abetted RIOC's retaliation against Plaintiffs.

173.    Plaintiffs engaged in protected activity when they opposed and complained of the racial discrimination they were being subjected to in emails or reports to RIOC and the Chamber.

174.    Defendants knew that Plaintiffs engaged in protected activity.

175.    Plaintiffs' engagement in their protected activity caused the materially adverse, and retaliatory, actions by Defendants, including, but not limited to, being excluded from the practice of selecting new RIOC Board Members, and having input before a RIOC Board Member – adverse to Haynes and Robinson – was appointed to a committee of his choosing.

176.    There was a causal connection between Plaintiffs' protected activities and the actions of Defendants.  Defendants subjected Plaintiffs to such actions because of and in retaliation for Plaintiffs' protected activities.

177.    As a direct and proximate result of these actions, Plaintiffs suffered and continue to suffer actual damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of NYCHRL, N.Y.C. Admin. Code §§ 8-101 *et seq.*)
### (Against All Defendants)

178.     Plaintiffs repeat and reallege the allegations in paragraph 1 – paragraph 118 as if fully set forth herein.

179.     By reason of the foregoing, Defendants aided and abetted in subjecting Plaintiffs to a hostile work environment within the meaning of the NYCHRL, N.Y.C. Admin. Code §§ 8-101 *et seq*.

180.     The environment of Plaintiffs' workplace was permeated with discriminatory behavior such that Plaintiffs were treated less well than other employees, and were subjected to inferior terms, because of their race.

181.     Defendants knew, or should have known, about the hostile work environment and failed to take corrective action.

182.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiffs suffered and continue to suffer actual damages in an amount to be determined at trial.

### JURY TRIAL DEMANDED

183.     Plaintiffs demand a jury trial as to all issues triable by a jury.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that the Court enter judgment and relief as follows:

a.     Declaring that the acts and omissions complained of herein are unlawful and violate 42 U.S.C. § 1983, the NYSHRL, and the NYCHRL;

b.     Awarding damages to Plaintiff, in an amount to be determined at trial, for lost opportunities and to otherwise make Plaintiffs whole for any losses suffered as a result of Defendants' actions;

c.       Awarding Plaintiffs compensatory damages, in an amount to be determined at trial, for humiliation, mental anguish, emotional distress, and injury to reputation;

d.       Awarding Plaintiffs punitive damages in an amount to be determined at trial;

e.       Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of this action; and

f.       Awarding Plaintiffs such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' actions.

Dated: New York, New York
September 12, 2023

**WALDEN MACHT & HARAN LLP**

By: _____
Milton L. Williams
Jeffrey C. Skinner
Catherine Weiss
250 Vesey Street, 27th Floor
New York, New York 10281
Tel: (212) 335-2030
mwilliams@wmhlaw.com
jskinner@wmhlaw.com
cweiss@wmhlaw.com

*Attorneys for Plaintiffs Shelton J. Haynes and Gretchen K. Robinson*