```
                                              USDC SDNY
                                              DOCUMENT
UNITED STATES DISTRICT COURT                  ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                 DOC #: _____
                                              DATE FILED: 3/11/2024
```

| | |
|---|---|
| SHELTON J. HAYNES and GRETCHEN K. ROBINSON, | |
| Plaintiffs, | |
| -against- | 23-cv-08051-MKV |
| ROGER MALDONADO, TANIA DISSANAYAKE, DIANA LOPEZ, ALEJANDRO VALELLA, RUTHANNE VISNAUSKUS, BEN FHAFA, EXECUTIVE CHAMBER FOR THE OFFICE OF THE GOVERNOR OF NEW YORK, and ROOSEVELT ISLAND OPERATING CORPORATION, | OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |
| Defendants. | |

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Shelton J. Haynes ("Haynes") and Gretchen K. Robinson ("Robinson," and collectively with Haynes, "Plaintiffs"), bring this action against Defendants the Executive Chamber for the Office of the Governor of New York ("Chamber"), Roosevelt Island Operating Corporation ("RIOC"), Roger Maldonado, Tania Dissanayake, Ruthanne Visnauskas, Diana Lopez, Alejandro Valella, and Ben Fhala (collectively, "Defendants") pursuant to pursuant to 42 U.S.C. § 1983, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §§ 290 *et seq.*, and the New York City Human Rights Law, alleging racial discrimination, retaliation, and hostile work environment (Compl. [ECF No. 1]). Simultaneous with the filing of the Complaint, Plaintiffs moved the Court, by Order to Show Cause, for Preliminary Injunctive Relief, [ECF No. 75].

In support of its Motion for Preliminary Injunction, Plaintiff filed a memorandum of law, [Pl. Br. ECF No. 76], along with the Affidavit of Plaintiff Haynes (Haynes Aff. [ECF No. 77]) and

the Affidavit of Plaintiff Robinson (Robinson Aff. [ECF No. 78]). In opposition to Plaintiffs' Motion, Defendant RIOC filed a memorandum of law, (RIOC Opp. [ECF No. 82]), and the Declaration of Howard L. Polivy, with several exhibits attached, (Polivy Decl. [ECF No. 83]). Defendant Chamber also filed a memorandum of law in opposition, (Chamb. Opp. [ECF No. 84]). Plaintiffs filed a reply, (Pl. Reply [ECF No. 85]), with several exhibits including, a reply affidavit of Plaintiff Haynes, (Haynes Reply Aff. [ECF No. 85-1]) and a reply affidavit of Plaintiff Robsinson, (Robinson Reply Aff. [ECF No. 85-7]).

By joint letter dated February 29, 2024, the parties advised the Court that they intended to proceed on the documentary record submitted in support of and in opposition to Plaintiffs' Motion for a Preliminary Injunction and did not require an evidentiary hearing. [ECF No. 92]. For the following reasons, Plaintiffs' Motion for a Preliminary Injunction is DENIED.

## BACKGROUND

### I. Haynes's Ascension to RIOC CEO and President and Allegedly Discriminatory Backlash

RIOC is a New York State public benefit corporation responsible for operating Roosevelt Island, New York. Second Amended Complaint [ECF No. 81] ("SAC") ¶ 10. The RIOC Board governs RIOC and, pursuant to RIOC's enabling legislation, is composed of nine members, seven of whom are public members appointed by the Governor with the advice and consent of the Senate. SAC ¶ 23. The RIOC Board sets RIOC policy and is responsible for the business affairs of RIOC. SAC ¶ 23.

Plaintiff Haynes, an African American man, first joined RIOC in April 2016, first serving as the COO, then (beginning June 19, 2020) Acting CEO and President, and currently (beginning on March 16, 2021) as CEO and President. Haynes Aff. ¶¶ 2–3, 5–6. Haynes was promoted after the Chamber terminated then-CEO and President Susan Rosenthal, following an investigation by

the Office of Employee Relations ("OER"),[1] which revealed several instances in which Rosenthal spoke to subordinates, including Haynes, using racist and sexually inappropriate language. SAC ¶ 23; Haynes Aff. ¶¶ 4–5. Plaintiff Robinson, an African American woman, is the Vice President and General Counsel of RIOC, serving in that role since August 2019. Robinson Aff. ¶ 2.

According to Plaintiffs, the Chamber advances the Governor's policy initiatives and agenda and oversees government operations. SAC ¶ 9. The Chamber is also involved in all aspects of hiring RIOC administrative staff, including terminating the employment of RIOC executives and employees. SAC ¶ 9. The Chamber, for instance, provides Haynes and Robinson with directives on various issues. SAC ¶ 9.

Plaintiffs allege that since Haynes's promotion, both he and Robinson, as well as other African American RIOC executives, have been attacked and harassed because of their race. Haynes Aff. ¶ 7; Robinson Aff. ¶ 3; SAC ¶ 55. Plaintiffs allege that one form of harassment comes from David Stone, a local independent blogger (and non-party to this action), who has written several articles about RIOC's staff and executives, often using racially charged language. SAC ¶¶ 50, 57. Plaintiffs allege that the racist backlash Stone has expressed has purportedly been supported by local elected officials. SAC ¶ 59. Plaintiffs allege that they have complained to the Chamber about the hostile racial climate at RIOC on numerous occasions over the years. SAC ¶ 64. For example, RIOC's executive staff periodically sends the Chamber weekly reports, which have detailed the impact that Stone's attacks on RIOC's minority employees have had on RIOC's morale. SAC ¶ 66.

Plaintiffs allege that, to date, the Chamber and certain individuals working at the Chamber ("Individual Chamber Defendants") have done nothing to assist minority employees of RIOC, and,

---

[1] OER is the New York State entity charged with investigating complaints of employment-related protected class discrimination in agencies and departments over which the Governor has executive authority. SAC ¶ 19.

instead, have aided and abetted the racist campaign against Haynes, Robinson, and other RIOC minority employees. SAC ¶ 72. Namely, Plaintiffs allege that from about March 2021—when Haynes was officially appointed CEO and President—through the beginning of approximately March 2022, state agencies have launched no fewer than ten inquiries and investigations into alleged wrongdoing by the RIOC management and Haynes and Robinson specifically. SAC ¶ 75. Plaintiffs argue that these investigations were not only frivolous, but most were initiated in response to allegations by Stone or former employees who "had a reputation for filing unsubstantiated complaints." SAC ¶¶ 36, 75. Plaintiffs allege that in the face of these mounting frivolous attacks, the Chamber instructed Plaintiffs to do nothing. SAC ¶ 62. Plaintiffs allege that notwithstanding the lack of support, they continued to try to work with the Chamber and other state agencies to address the toxic racially charged work environment. SAC ¶ 85.

## II. Independent Counsel Investigates Allegations of Wrongdoing Against Plaintiffs

In March 2022, former employees published an open letter accusing RIOC executive staff, including Haynes and Robinson, of serious wrongdoing, including, but not limited to, accepting kickbacks, abuse of power, cronyism, and promoting a toxic work environment. SAC ¶ 78. In response to the open letter, the Audit Committee of the RIOC Board decided to hire a law firm to independently investigate the practices and procedures of RIOC management. SAC ¶ 89. Plaintiffs allege that the decision to hire outside counsel to investigate allegations of wrongdoing by RIOC management was in stark contrast to how allegations of more severe wrongdoing by white RIOC management had been handled in the past. SAC ¶¶ 91, 92. Nevertheless, during approximately the next seven months following the open letter, the law firm interviewed numerous employees and reviewed many personnel files, documents, emails, and reports. SAC ¶ 96.

Plaintiffs allege that not only did the initial draft of the law firm's report "fully exonerate[]

Plaintiffs of any wrongdoing, including the allegations by the Former Employees," but it included a section supporting Plaintiffs' claims of racial discrimination at RIOC. SAC ¶ 97. Allegedly, at one point during the investigation, the lead partner from independent counsel advised Plaintiff Haynes that "he should sue." SAC ¶ 102. Nevertheless, Plaintiffs allege that, because this "was not the result that the Chamber wanted," the Chamber insisted that the initial draft remove all discussion of discrimination and hostile work environment. SAC ¶ 98. Individual Chamber Defendants allegedly instructed the law firm to "remove and sanitize all discussion in the report that touched on Plaintiffs' accounts of the racial discrimination that they had experienced." SAC ¶ 114. Thereafter, a second draft of the report was presented to the RIOC Board during executive session. SAC ¶ 118. The second draft exonerated Plaintiffs of wrongdoing but did not contain any discussion of their claims of discrimination. SAC ¶ 118. In September 2023, the Board adopted a resolution authorizing the release of the report. SAC ¶ 127.

Throughout the investigation, Plaintiffs allege that the Chamber interfered with the execution of their duties and responsibilities based on their race. SAC ¶¶ 128–53. Among other things, Plaintiffs allege that the Chamber has undermined Plaintiffs' authority and ability to discharge their job functions and treated them disparately from their white colleagues, including by appointing new Board members who are antagonistic to Plaintiffs and excluding Plaintiffs from the selection of new RIOC Board Members. SAC ¶ 130.

### III. Plaintiffs File Their Complaint in This Action and Defendants Allegedly Retaliate

On September 12, 2023, Plaintiffs commenced this action against five Individual Defendants, consisting of Chambers employees and current and former RIOC Board Members. [ECF No. 1]. Plaintiffs allege that after filing their lawsuit, the racial discrimination against them increased. Plaintiffs allege, for example, that their emails were secretly searched, and more than

one attempt was made to obtain their confidential files. SAC ¶¶ 156, 157, 161. Plaintiffs allege that within a week of filing their complaint, one of the two new Board members whose appointment the Chamber pushed through took steps to reduce the scope of Plaintiffs' authority and initiate a new frivolous investigation against them. SAC ¶ 155. Additionally, an Individual Defendant initiated yet another purportedly frivolous investigation into Plaintiffs by emailing the New York State Inspector General ("NYSIG"). SAC ¶ 163.

On or around November 28, 2023, counsel for RIOC sent Plaintiffs' counsel proposed "Protocols for Executive Leadership and the RIOC Board of Directors," which were designed to govern how Plaintiffs should interact with RIOC staff and Board members in order to reduce any friction inadvertently caused by Plaintiffs' pending lawsuit. SAC ¶ 179; Polivy Decl. ¶ 159. Approximately one week later, Plaintiffs filed an amended complaint adding Individual Defendant Fhala, RIOC, and the Chamber as Defendants. [ECF No. 43]. Approximately one week later, Plaintiffs' counsel responded to the communication from the RIOC Board with proposed comments on the draft protocol. SAC ¶ 181; Polivy Decl. ¶ 161.

According to Defendants, over the span of two to three days, several RIOC employees complained to Howard Polivy, RIOC Audit Committee Chair, about the difficult and corrosive work environment at RIOC. Polivy Decl. ¶¶ 18, 22, 45, 94. Defendants allege that across the six RIOC employee complaints Polivy received in total, all described a hostile and retaliatory work environment created by Plaintiffs, *see* Polivy Decl. ¶¶ 23, 96, and raised concerns about Plaintiffs flouting of internal operational controls that impair the functioning of RIOC. Polivy Decl. ¶¶ 44, 67, 81. Each of the employees with whom Polivy spoke also expressed fear of speaking freely due to Plaintiffs' recording of telephone conversations. Polivy Decl. ¶¶ 35, 58, 65.[2]

---

[2] In the Second Amended Complaint, Plaintiffs admit they routinely recorded private conversations with RIOC Board Members and employees. SAC ¶¶ 99, 101, 117, 119, 121-25.

On or about January 16, 2024, Plaintiffs were informed that they were being placed on paid administrative leave pending an investigation into alleged employee complaints. SAC ¶ 190; Polivy Decl. ¶ 104. Plaintiffs were also informed that an external law firm would be leading the investigation. SAC ¶ 194; Polivy Decl. ¶ 104.

### IV. Plaintiffs' File a Motion for a Preliminary Injunction

On January 23, 2024, Plaintiffs moved for a temporary restraining order ("TRO") and preliminary injunction ordering all Defendants to (1) refrain from initiating an investigation or disciplinary proceedings or taking other adverse employment actions against Plaintiffs, and (2) to restore Plaintiffs to their positions at RIOC, until the Court has made a final decision regarding the merits of Plaintiffs' employment discrimination action. [ECF No. 76]; [ECF No. 74] ("Proposed Order to Show Cause with Emergency Relief"). After a hearing on the requested emergency relief, Judge Failla, to whom this case was originally assigned, denied Plaintiffs' TRO motion finding no irreparable harm. [ECF No. 89], Hearing Tr. 50:14-19, Jan. 26, 2024. Additionally, Judge Failla ordered further briefing on the preliminary injunction motion.

This case was then reassigned to the undersigned. By joint letter dated February 29, 2024, the parties advised the Court that they intended to proceed on the briefing and documentary record submitted in support of and in opposition to Plaintiffs' Motion for a Preliminary Injunction and did not require an evidentiary hearing. [ECF No. 92]. The parties further confirmed that the factual record was closed for purposes of the preliminary injunction motion. [ECF No. 92].

### **LEGAL STANDARD**

A plaintiff seeking a preliminary injunction must show: (1) "a likelihood of success on the merits"; (2) "that [the plaintiff] is likely to suffer irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) "that the public interest would not be disserved by the issuance of [the] injunction." *Res. Grp. Int'l Ltd. v. Chishti*, 91

F.4th 107, 114 (2d Cir. 2024) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010) (internal quotation marks omitted)); *see also Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (*per curiam*) (alteration in original) (emphasis in original) (internal quotation marks omitted).

Moreover, courts have often applied a more stringent standard in reviewing requests for injunctive relief in employee disputes involving government employers. *See, e.g.*, *Kane v. De Blasio*, 19 F.4th 152, 171 (2d Cir. 2021) (stating the court will "apply particularly stringent standard for irreparable injury" in cases involving government personnel); *English v. Trump*, 279 F. Supp. 3d 307, 334 (D.D.C. 2018) (explaining that courts are unlikely to grant preliminary injunctively relief in loss of employment cases for government employees).

## **DISCUSSION**

The Court need not address the likelihood of success on the merits for Plaintiffs' claims, because the Court finds that Plaintiffs have failed to establish likelihood of irreparable harm, which is "an absolute requirement for a preliminary injunction." *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90 (2d Cir. 1983); *see also Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) ("irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction"). "It is well established that an irreparable injury is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011); *see also Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002); *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (irreparable harm is likely "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned

to the positions they previously occupied.").

Plaintiffs *concede* that "courts often hold that termination of employment by itself (and the ensuing financial distress) does not constitute irreparable harm." *See* Pl. Br. at 13. Plaintiffs are correct. Loss of employment—much less paid preservation of employment through paid leave—is traditionally insufficient to establish irreparable harm "unless *truly extraordinary circumstances are shown.*" *Oliver v. New York State Police*, 812 F. App'x 61, 63 (2d Cir. 2020) (quoting *Holt*, 708 F.2d at 90 (citing *Sampson v. Murray*, 415 U.S. 61, 91–92 & n. 68 (1974))) (emphasis added). "[I]rreparable harm is not [for instance] established in employee discharge cases by financial distress or inability to find other employment." *Holt*, 708 F.2d at 90.

Plaintiffs rely on *Holt* to argue that the Second Circuit has held that "[a] retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights under the [law] or from providing testimony for [a] plaintiff in [his or] her effort to protect [his or] her own rights," and that "[t]hese risks *may* be found to constitute irreparable injury." *Holt*, 708 F.2d at 91 (emphasis added). However, a plaintiff relying on this argument must "offer evidence" "that that other employees may be deterred from protecting their rights under the [law] or from providing testimony for [a] plaintiff in [his or] her effort to protect [his or] her own rights." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 511–12 (2d Cir. 2005).

Plaintiffs argue that they "have heard from several RIOC employees who are terrified about their job security and career opportunities given Defendants' unreasonable and targeted treatment of Plaintiffs following their complaints of discrimination and retaliation." Pl. Br. at 14 (citing Haynes Aff. ¶ 50; Robinson Aff. ¶ 35). In so arguing, Plaintiffs point to verbatim "copy-paste" language in their respective affidavits: "I am aware of numerous RIOC staff members and employees who are terrified about their job security and career opportunities given Defendants' unreasonable and targeted treatment of [us] following our complaints of discrimination and

retaliation." Haynes Aff. ¶ 50; Robinson Aff. ¶ 35.  While "hearsay evidence may be considered by a district court in determining whether to grant a preliminary injunction," *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010), Plaintiffs initially provided nothing more than conclusory statements devoid of facts.  In response, Defendants argued that Plaintiffs "have not proffered any concrete evidence of this supposed chilling effect on other employees' willingness to complain about discrimination." RIOC Opp. at 14.  Instead, at least one employee has filed an internal complaint with RIOC's Legal Department alleging a hostile work environment as recent as mid-January 2024.  [ECF No. 89], Hearing Tr. 25:22-26:1, Jan. 26, 2024.  Moreover, several RIOC employees complained to Polivy, RIOC Audit Committee Chair, about alleged hostile and retaliatory work environment created *by* Plaintiffs. Polivy Decl. ¶¶ 18, 22, 45, 94.

Presumedly acknowledging their lack of evidence that other employees may be deterred from protecting their rights, Plaintiffs filed supplemental "reply affidavits" in which they proffer new evidence (not contained in their original affidavits) that RIOC employees are afraid of protecting their own rights and afraid of providing testimony for Haynes and Robinson.  *See* Haynes Reply Aff. ¶¶ 4–5, 7, 11–13; Ex. 1; Robinson Reply Aff. ¶¶ 11–13.  While this evidence arguably could support Plaintiffs' claim of irreparable injury, it does not provide sufficient detail to establish the "extraordinary circumstances" required by Circuit precedent.  *Oliver*, 812 F. App'x at 63.

In support of their argument, Plaintiffs cite to a myriad of non-binding and distinguishable cases.  *See* Pl. Reply at 11.  Indeed, the cases that Plaintiffs cite do briefly consider the possibility that other employees may be chilled from coming forward or testifying.  In none of those cases, however, did the Court find irreparable harm on the fact that other employees may be deterred from coming forward or testifying *alone*.  Instead, in each case, the district courts emphasized the "truly extraordinary circumstances" unique to their respective plaintiffs.  *See* Pl. Reply at 11 (citing

10

*Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 135 (W.D.N.Y. 2003) (finding irreparable harm in retaliation case where, among other facts, plaintiffs were reluctant to appear in court to pursue their rights "because they were afraid that [defendants would] contact authorities and have them *arrested and deported*") (emphasis added); *De Novellis v. Shalala*, 947 F. Supp. 557, 563 (D. Mass. 1996), *aff'd sub nom. DeNovellis v. Shalala*, 135 F.3d 58 (1st Cir. 1998) (finding irreparable harm where retaliatory action went "beyond the ordinary and remediable dislocation of adverse employment decisions" because plaintiff would either have had to uproot her life and move across country, accept a demotion, or retire).

Here, Plaintiffs are not in fear of arrest and deportation, nor have they been demoted, fired, or forced to retire. Plaintiffs have simply been placed on *paid* administrative leave pending an ongoing investigation into numerous RIOC employee complaints. SAC ¶ 190; Polivy Decl. ¶ 104. Thus, the Court simply finds that Plaintiffs have failed to establish "truly extraordinary circumstances" required by Circuit precedent for loss of employment—or in this case, paid leave— to sufficiently constitute irreparable harm. *Oliver*, 812 F. App'x at 63.[3]

Moreover, while Plaintiffs concede that loss of reputation resulting from an employee's discharge is normally insufficient to create an irreparable injury, Pl. Br. at 15, they argue that being the subjects of an investigation will cause them to experience reputational harm so extraordinary as to warrant a finding of irreparable injury. Specifically, Plaintiffs argue that the circumstances here are "far more public than the typical employer-employee dispute and involve a deliberate and malicious campaign to malign Plaintiffs." Pl. Br. at 15. In particular, Plaintiffs point to a press

---

[3] The Court also notes that a temporary order of reinstatement would likely not, as Plaintiffs' argument assumes, vitiate the alleged chilling effect, as the investigation and Plaintiffs' claims of retaliation will continue to be the subject of litigation and permanent discharge remains a possibility. *Cf Piercy v. Fed. Rsrv. Bank of New York*, No. 02-CV-5005 (DC), 2003 WL 115230, at *5 (S.D.N.Y. Jan. 13, 2003); *see also Am. Postal Workers Union*, 766 F.2d 715, 722 (2d Cir. 1985) ("[W]e fail to understand how a chilling of the [exercise of rights] could logically be thawed by the entry of an interim injunction, since the theoretical chilling of protected [rights] . . . stems not from the interim discharge, but from the threat of permanent discharge, which is not vitiated by an interim injunction.").

release by Defendants announcing Plaintiffs' leave and stating that there were "concerns about the RIOC workplace." Pl. Br. at 16.

First, while Plaintiffs ultimately may be able to prove that as subjects of an investigation they will experience "extraordinary" reputational harm, at this stage, the argument is conclusory and speculative. *See e.g.*, Pl. Br. at 16 ("Defendants have repeatedly besmirched Plaintiffs' reputations"); Pl. Br. at 16–17 ("[I]f Defendants' retaliatory conduct continues, by the time this Court decides Plaintiffs' employment discrimination lawsuit, Plaintiffs *will likely* be stripped of their professional reputations and unemployed.") (emphasis added). In other words, Plaintiffs fail to "demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Oliver*, 812 F. App'x at 62; *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

Nor does the Court agree that the circumstances here "so far depart from the normal [employer discharge] situation [such] that irreparable injury might be found." *Sampson*, 415 U.S. at, 92, 94; *see e.g.*, *Star Boxing, Inc. v. Tarver*, No. 02-CV-8446 (GEL), 2002 WL 31867729, at *3 (S.D.N.Y. Dec. 20, 2002) (rejecting irreparable harm to reputation where the embarrassing fact was "already known in boxing circles" so "whatever embarrassment could arise ... ha[d] already occurred"); *Alvarez v. City of New York*, 2 F. Supp. 2d 509, 514 n.5, 514–15 (S.D.N.Y. 1998) (rejecting irreparable harm to reputation where the fact of investigation was already publicized, so "any 'damage' [wa]s already done"); *Oliver*, 812 F. App'x at 63 (holding plaintiff's loss of reputation and difficulty finding other employment also does not constitute an irreparable injury).

Plaintiffs attempt to shirk this unfavorable case law by citing several cases that indicate loss of reputation may qualify as irreparable harm *for corporate entities*. Pl. Br. at 15–16 ("Due to the widespread publicity, the reputational damage at issue is therefore more analogous to the reputational damage in the business context that courts have repeatedly found to constitute

12

irreparable harm."). Plaintiffs argue that "[a]s with harm to a company's goodwill, a stain on Plaintiffs' reputations would permanently impair their careers and business relationships." Pl. Br. at 16. The Court is unpersuaded by this argument, which runs counter to established law in this Circuit. *Sampson*, 415 U.S. at, 92, 94; *Oliver v. New York State Police*, 812 F. App'x 63. As previously stated, and as Plaintiffs concede, loss of reputation resulting from an employee's discharge (much less paid leave) is normally insufficient to create an irreparable injury. Plaintiffs provide no compelling reason why, as individual employees, case law relating to corporate entities' reputations are comparable.

## CONCLUSION

On the record before it, the Court cannot find that Plaintiffs have shown irreparable harm. As such, Plaintiffs' Motion for a Preliminary Injunction is DENIED.

**SO ORDERED.**

**Date: March 11, 2024**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**