USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _3/27/2025_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHELTON J. HAYNES AND GRETCHEN K. ROBINSON,

                          Plaintiffs,

          -against-

EXECUTIVE CHAMBER FOR THE OFFICE OF THE GOVENOR OF NEW YORK, ROOSEVELT ISLAND OPERATING CORPORATION, ROGER MALDONADO, TANIA DISSANAYAKE, RUTHANNE VISNAUSKAS, DIANA LOPEZ, ALEJANDRO VALELLA, and BEN FHALA,

                          Defendants.

1:23-cv-08051 (MKV)

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

        Plaintiffs Shelton J. Haynes and Gretchen K. Robinson (collectively, "Plaintiffs"), brought this action against Defendants Executive Chamber for the Office of the Governor of New York (the "Chamber") and Roosevelt Island Operating Corporation ("RIOC") asserting discrimination and retaliation claims under Title VII and against Individual Defendants Roger Maldonado, Tania Dissanayake, Ruthanne Visnauskas, Diana Lopez, Alejandro Valella, and Ben Fhala alleging race discrimination, retaliation, and hostile work environment claims under Title 42, United States Code Section 1983 ("Section 1983"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Before the Court is a motion to dismiss the Second Amended Complaint on behalf of Defendants Chamber, Maldonado, Dissanayake, Visnauskas, Lopez, and Valella, (collectively "Defendants").  [ECF No. 102].  In support of their motion, Defendants submitted a memorandum of law.  ("Defs. Mem.," [ECF No. 103]).  Plaintiffs

filed an opposition consisting of a memorandum of law, ("Pls. Opp.," [ECF No. 104]), and Defendants replied. ("Defs. Reply," [ECF No. 105]). For the reasons discussed below Defendants' motion to dismiss is GRANTED.

## BACKGROUND[1]

### I.    Factual Background

Plaintiff Haynes is the Chief Executive Officer and President of Roosevelt Island Operating Corporation ("RIOC") and has held that title since approximately March 2021. SAC ¶ 7. Plaintiff Robinson is the Vice President and General Counsel of RIOC and has held that position since approximately August 2019. SAC ¶ 8.

Defendant RIOC is a New York State public benefit corporation responsible for operating Roosevelt Island, New York. SAC ¶ 10. The RIOC Board governs RIOC, sets RIOC policy, and is responsible for the business affairs of RIOC. SAC ¶ 23. Defendant Visnauskas is the Commissioner and CEO of the New York State Homes & Community Renewal ("HCR") and she serves as "an ex officio member of the RIOC Board." SAC ¶ 14. Defendant Lopez is the Senior Vice President and General Counsel of HCR and until approximately September 12, 2023, she served as the RIOC Board Chair Representative. SAC ¶ 15. Defendant Valella serves as Vice President and Deputy Counsel of HCR and served as RIOC's Board Chair Representative before Defendant Lopez's appointment. SAC ¶ 16. Defendant Fhala served as a RIOC Board Member. SAC ¶ 17.

Defendant Chamber advances the Governor's policy initiatives, agenda, and oversees government operations. SAC ¶ 9. Plaintiffs allege that Defendant Chamber is involved in all

---

[1]  The facts are taken from the Second Amended Complaint, ("SAC," ECF No. 81), and are accepted as true for purposes of the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true.")

aspects of hiring RIOC administrative staff, terminating the employment of RIOC executives and employees, and provides Plaintiffs with directives on various issues.  SAC ¶ 9.  Defendant Maldonado serves as Assistant Counsel to Governor Hochul and works for Defendant Chamber.  SAC ¶¶ 9, 11.  Plaintiffs allege that Defendant Maldonado regularly held meetings with Plaintiff Robinson and provided her with directives.  SAC ¶ 11.  Defendant Dissanayake serves as Deputy Secretary for Housing for New York State and also works for Defendant Chamber.  SAC ¶ 12.  Plaintiffs also allege that Defendant Dissanayake regularly held meetings with Plaintiffs and provided them with directives.  SAC ¶ 12.

The New York State Inspector General ("NYSIG") is responsible for receiving and investigating complaints concerning allegations of corruption, fraud, criminal activity, conflicts of interest or abuse in any entity under its jurisdiction, including New York State public benefit corporations.  SAC ¶ 18.  The New York State Office of Employee Relations ("OER") is the New York State entity charged with investigating complaints of employment-related protected class discrimination in agencies and departments over which the Governor has executive authority.  SAC ¶ 19.  The New York State Commission on Ethics and Lobbying in Government ("COELIG") was created to ensure compliance with the State's ethics and lobbying laws and regulations and has jurisdiction over New York State public benefit corporations.  SAC ¶ 20.  The New York State Department of Human Rights ("NYSDHR") is the State agency charged with enforcing New York State's Human Rights Law.  SAC ¶ 21.  The Office of the New York State Comptroller is responsible for providing independent fiscal oversight on the State and local finances.  SAC ¶ 22.

Plaintiffs allege that the prior CEO and President of RIOC, Susan Rosenthal, was terminated by the Defendant Chamber following an investigation by the OER, which revealed numerous instances in which Rosenthal spoke to subordinates using racist and sexually

inappropriate language.  SAC ¶ 52.  Plaintiff Haynes was appointed by the RIOC Board to the role of acting President of RIOC and later appointed to the permanent position of CEO and President of RIOC.  SAC ¶¶ 53–54.

Plaintiffs, both of whom are African American, SAC ¶ 1, allege that they have received an unprecedented level of scrutiny and hostility because of their race since the promotion of Plaintiff Haynes to CEO and President of RIOC.  SAC ¶¶ 55–56.  Plaintiffs allege that one form of harassment that they have faced has come from David Stone, a local blogger who operates "The Roosevelt Islander Online."  SAC ¶¶ 50, 57–58.  Plaintiffs allege that Stone's articles were also supported by local elected officials, including Senator Krueger and Assemblymember Seawright, and that these articles had a severe negative impact on Plaintiffs, their staff, and the work environment of RIOC.  SAC ¶¶ 59–60.  Plaintiffs allege that they repeatedly complained of the conduct and the impact it was having on the work environment, but Defendants RIOC and Chamber took no steps to remedy it.  SAC ¶¶ 61, 64.  Plaintiffs allege that similar complaints were also made directly to Defendants Dissanayake and Maldonado.  SAC ¶ 65.

Specifically, Plaintiffs allege that they sent Defendant Chamber weekly reports known as "Red/Green Reports" which contained problems (red flags) including complaints from RIOC's minority executives about the allegedly hostile racial climate fueled by Stone's harassment.  SAC ¶¶ 67–68.  Plaintiffs allege that in one particular Red/Green Report Plaintiffs indicated that they planned to have RIOC engage outside counsel and a crisis management team to advise RIOC on how to address Stone's "targeted attacks" because they were negatively affecting employee productivity, morale, and were even making it difficult to attract and retain talent.  SAC ¶¶ 69, 71. Defendant Chamber allegedly instructed Plaintiffs not to contact outside counsel or a crisis management team.  SAC ¶¶ 72–73.

Plaintiffs allege that "[f]rom when Haynes was officially appointed CEO and President in or about March 2021 through approximately the beginning of March 2022, State agencies, including NYSIG, OER, the COELIG, and NYSDHR have launched no fewer than ten (10) inquiries and investigations into alleged wrongdoing by the RIOC management and Plaintiffs specifically" and "[t]he allegations underlying these investigations" were "initiated in response to allegations by Stone or the Former Employees." SAC ¶ 75. Plaintiffs allege that these "investigatory inquiries rarely occurred during the 4.5 years that Plaintiffs reported to Rosenthal." SAC ¶ 75.

Plaintiffs allege that in March 2022 a group of Former Employees, SAC ¶ 36, published an "open letter" and filed a subsequent lawsuit that accused RIOC executive staff, including Plaintiffs, of accepting kickbacks, promoting a toxic work environment, and other wrongdoing. SAC ¶¶ 78, 81. Plaintiffs allege that in response, Defendants Chamber and RIOC instructed Plaintiffs to do nothing. SAC ¶¶ 79–80, 82–83. In particular, Plaintiffs allege that Defendant Maldonado called Plaintiff Robinson and scolded her for filing a counterclaim for defamation without first consulting Defendant Chamber and Defendants Lopez and Visnauskas called Plaintiff Haynes and directed him to dismiss the countersuit. SAC ¶¶ 82–84. In addition, Plaintiffs allege that the "discriminatory investigation reached a new low" when in response to these allegations Defendants Chamber, Valella, and Dissanayake hired the law firm Greenberg Traurig to independently investigate the practices and procedures of RIOC management instead of following the normal NYSIG reporting and investigation process. SAC ¶¶ 87–91, 94. Plaintiffs allege that prior allegations of wrongdoing made against RIOC management all had been investigated by state agencies, such as the NYSIG, OER, COELIG, or the NYSDHR. SAC ¶¶ 91–92.

For approximately seven months Greenberg Traurig interviewed employees, reviewed personnel files, documents, emails, and reports.  SAC ¶¶ 95–97.  Plaintiffs allege that the investigation conducted by Greenberg Traurig was thorough, but the response by Defendant Chamber was problematic.  SAC ¶ 97.  Plaintiffs allege that the investigation report by Greenberg Traurig fully exonerated Plaintiffs of any wrongdoing and even included a section discussing the racial discrimination complaints made by Plaintiffs.  SAC ¶¶ 97, 113.  Plaintiffs allege that before the report could be released Defendant Chamber, through Defendants Lopez and Valella, stated that all discussion of discrimination and hostile work environment needed to be removed from the report.  SAC ¶¶ 98, 114.  Plaintiffs allege that the scope of the investigation expanded in January 2023 and Greenberg Traurig continued to interview individuals.  SAC ¶¶ 100, 102–03.

Plaintiffs allege that in April 2023 Defendants Lopez and Visnauskas emailed them and instructed them not to speak with the RIOC Board Members without Defendants Lopez and Visnauskas "present because 'they don't feel comfortable' with Plaintiffs speaking directly to the RIOC Board.  SAC ¶ 106.  Plaintiffs allege that no RIOC Board Chair or RIOC Board Chair Representative previously had ever taken such a position.

Shortly thereafter, Plaintiffs alleged that they emailed Defendants Visnauskas, Lopez, Valella, Dissanayake, and Maldonado complaining about Assemblymember Seawright "publicly advancing a false narrative about RIOC executive staff and how that narrative" combined with other critical articles being published by third parties had disrupted operations of RIOC.  SAC ¶¶ 107, 110.  Plaintiffs allege that they requested "public exoneration in the form of a public meeting and written statement from the RIOC Board and the Chamber at the conclusion of Greenberg Traurig's investigation."  SAC ¶ 110.  Plaintiffs allege that Defendants Chamber and RIOC took no action and "the only proffered solution was to offer [Plaintiff] Robinson a new job."  SAC ¶¶

111–12.  Specifically, Plaintiffs allege that Pei Pei Cheng, Assistant Counsel to Governor Hochul, and Defendant Maldonado had a call with Plaintiff Robinson in May 2023 and Cheng allegedly asked Robinson if she "wanted to go elsewhere."  SAC ¶ 112.  Plaintiffs allege that any other position would have been a demotion because all open positions had a lower salary and less responsibility.  SAC ¶ 112.

Plaintiffs allege that eventually a second draft of the investigation report was presented, and it did not contain any discussion of Plaintiffs' claims of discrimination.  SAC ¶¶ 118–19, 123.  Eventually, the RIOC Board adopted a resolution authorizing the release of the investigation report, but did not issue a press release announcing the exoneration of Plaintiffs.  SAC ¶ 127.

Plaintiffs allege there was a general practice of including the CEO and President and the General Counsel of RIOC in the process of selecting, nominating, and appointing new board members and Defendant Chamber "circumvented that process once RIOC was under the leadership of an African American CEO/President and General Counsel."  SAC ¶¶ 129–31.  In particular, Plaintiffs allege that despite their request for information on the new board members and raising concerns about potential RIOC board members, their requests and concerns were ignored by Defendant Chamber.  SAC ¶¶ 132–33.

On June 16, 2023, Plaintiffs sent Defendant Chamber and HCR a letter requesting a litigation hold citing racial discrimination and retaliation.  SAC ¶ 141.  Plaintiffs allege that after they sent their litigation hold, Defendant Fhala was appointed to the RIOC Board, without their consultation, and engaged in conduct that ignored prior RIOC Board practice, was "antagonistic," "rude and condescending," and "disrespectful."  SAC ¶¶ 143–153.  Plaintiffs also allege that one week after they filed their initial Complaint Defendant Fhala took steps to reduce the scope of Plaintiffs' authority by requesting a reduction in Plaintiff Haynes' spend limit and initiating

another investigation into Plaintiffs' conduct.  SAC ¶¶ 155, 163.  Plaintiffs allege that Defendants Visnauskas and Chamber were aware of the conduct engaged in by Defendant Fhala and took no steps to stop or to mitigate the retaliatory conduct.  SAC ¶ 178.

Plaintiffs filed the original Complaint in this action in September 2023.  SAC ¶ 4. Thereafter, Plaintiffs allege that outside counsel for RIOC emailed counsel for Plaintiffs "proposed 'Protocols for Executive Leadership and the RIOC Board of Directors" (the "Proposed Protocols") which were intended to "govern how Plaintiffs should interact with RIOC staff and board members in order to reduce any friction inadvertently caused by Plaintiffs' pending lawsuit."  SAC ¶ 179. Plaintiffs filed an amended complaint adding Defendants Chamber, RIOC, and Fhala on December 8, 2023.  [ECF No. 43].  At the same time, Plaintiffs supplied edits to the Proposed Protocols. SAC ¶ 181.  Plaintiffs allege that the proposed protocols were never executed and outside counsel for RIOC never replied to their suggested edits.  SAC ¶ 181.

Thereafter on January 16, 2024, Defendant Visnauskas informed Plaintiffs that effective immediately they would be placed on paid administrative leave because the RIOC Board had received complaints "from at least five staff members about them and RIOC's administration, alleging a toxic work environment."  SAC ¶¶ 190–92.  The five employee complaints were allegedly submitted after counsel for Plaintiff provided suggested revisions to the Proposed Protocols and after Plaintiffs filed their amended complaint adding Defendants Chamber, RIOC, and Fhala.  SAC ¶ 192.  Plaintiffs allege that this is the first time they have ever been placed on administrative leave as a result of an ongoing investigation.  SAC ¶ 193.

## II.    Procedural Background

Plaintiffs commenced this action on September 12, 2023 against Defendants Maldonado, Dissanayake, Lopez, Valella, and Visnauskus.  [ECF No. 1].  Collateral to the filing of the original

Complaint Plaintiffs initiated a charge of discrimination process with the United States Equal Employment Opportunity Commission ("EEOC").  SAC ¶ 4.  Plaintiffs received their Right to Sue letters from the EEOC with respect to Defendants Chamber and RIOC on or about November 17, 2023.  SAC ¶ 4.

Subsequently, Plaintiffs filed an Amended Complaint, [ECF No. 43], adding Defendants Chamber, RIOC, and Fhala.  Thereafter, Plaintiffs filed a Second Amended Complaint, their operative complaint, [ECF No. 81], alleging race discrimination, retaliation, and hostile work environment claims under Title 42, United States Code Section 1983 ("Section 1983"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Defendants Chamber, Dissanayake, Lopez, Maldonado, Valella, and Visnauskus filed a pre-motion letter seeking to file a motion to dismiss, [ECF No. 98], the Court provided Plaintiffs an opportunity to amend their complaint in response to Defendants' motion to dismiss, [ECF No. 100], and Plaintiffs waived the opportunity to amend their complaint.  [ECF No. 101].

Now pending before the Court is a motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on behalf of Defendants Chamber, Maldonado, Dissanayake, Visnauskas, Lopez, and Valella.  [ECF No. 102].  For the reasons discussed below Defendants' motion to dismiss is GRANTED.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  More specifically, a plaintiff must allege sufficient facts to

show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  The Court must

" 'accept[ ] all of the complaint's factual allegations as true and draw[ ] all reasonable inferences

in the plaintiff's favor.' " *Siegel v. HSBC North America Holdings, Inc.*, 933 F.3d 217, 222 (2d

Cir. 2019) (quoting *Giunta v. Dingman*, 893 F.3d 73, 78–79 (2d Cir. 2018)).

<u>**DISCUSSION**</u>

**I.      Plaintiffs' Title VII Claim Against Defendant Chamber Fails
         Because Plaintiffs Have Not Alleged Sufficient Facts to Establish
         That Defendant Chamber Was Plaintiffs' Joint-Employer.**

Defendant Chamber moves to dismiss Plaintiffs' claim for discrimination and retaliation

against Defendant Chamber under Title VII and argues that Defendant Chamber is not Plaintiffs'

employer.[2]  While Plaintiffs concede that Defendant Chamber is not Plaintiffs' direct employer,

Pls. Opp. at 7, Plaintiffs nonetheless assert claims for discrimination and retaliation under Title

VII against Defendant Chamber.  SAC ¶¶ 210–15.  In opposition to Defendants' motion to dismiss

Plaintiffs argue that Defendant Chamber can be held liable under Title VII because it exercises

sufficient control over Plaintiffs' employment to constitute a joint employer.  Pls. Opp. at 7.

Title VII makes it "an unlawful employment practice for an *employer . . .* to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1) (emphasis added).

"The Second Circuit has long held that 'the existence of an employer-employee relationship is a

primary element of Title VII claims.' " *Mumin v. City of New York*, No. 1:23-CV-03932, 2024

WL 5146085, at *21 (S.D.N.Y. Dec. 17, 2024) (quoting *Gulino v. N.Y.S. Educ. Dep't*, 460 F.3d

361, 370 (2d Cir. 2006)).

---

[2] Plaintiffs plead these same claims against Defendant RIOC, which has filed an Answer [ECF No. 97] and has not
moved to dismiss.

The Second Circuit has recognized when "alleging an employer-employee relationship, an employee is not squarely limited to claims against his or her *formal* employer." *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022) (emphasis in original). One circumstance where a plaintiff can assert employer liability against an entity that its not formally his or her employer is pursuant to the "joint employer doctrine." *Id.* at 842. Under this theory " 'an employee, formally employed by one entity'' is 'assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity.' " *Id.* (quoting *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005)). In such a circumstance, an employee "may impose liability for violations of employment law on the constructive employer, on the theory that the other entity is the employee's joint employer." *Id.*

The Second Circuit has instructed that in determining whether an entity is an employer, and also a joint employer, for purposes of Title VII "the common law of agency" governs. *Id.* at 843. Therefore, courts should "apply a set of non-exhaustive factors set forth by the Supreme Court that, when present, may indicate the existence of an employer-employee relationship under the common law" including:

> [T]he hiring party's right to control the manner and means by which the product is accomplished ....[;] the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in the business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989). Based on the above principals, the Second Circuit has concluded that "[it] will therefore find a *joint* employer

relationship when two or more entities, according to common law principles, share significant control of the same employee." *Id.* (emphasis in original).

Defendants argue that the joint employer doctrine is inapplicable here, relying on the Second Circuit's decision in *Gulino v. N.Y.S. Education Department*. 460 F.3d at 378. In *Gulino*, the Second Circuit stated that "the four-factored analysis developed by the NLRB to determine whether two or more employers can be treated as one for purposes of assigning liability" should not be extended "to cases involving the complex relations between levels of government would be impracticable and would implicate" constitutional concerns. 460 F.3d at 378. However, Plaintiffs do not argue that Defendant Chamber and Defendant RICO should be treated as one. Instead Plaintiffs argue that under the joint employer theory, Plaintiffs were employed at the same time by Defendants Chamber and RIOC. *See* Pls. Opp. at 7. The single employer and joint employer theories are distinct. *See Felder*, 27 F.4th at 840 (recognizing the single employer doctrine and joint employer doctrine are two distinct theories with different tests); *see also Britton v. Bronx Parent Hous. Network, Inc.*, No. 21-CV-7079, 2022 WL 4332735, at *3 (S.D.N.Y. Sept. 19, 2022) (explaining that the single employer doctrine and joint employer doctrine although sometimes conflated are two "legally distinct" theories); *Education Department See Flynn v. Bronx Parent Hous. Network*, No. 21 CIV. 2871, 2023 WL 3582201, at *3 (S.D.N.Y. May 22, 2023) (same). Therefore, this Court will follow the Second Circuit's recent and detailed explanation in *Felder v. U.S. Tennis Association*, to determine whether Plaintiffs plausibly have alleged a joint employer relationship. 27 F.4th at 842–844.

The Second Circuit instructed in *Felder v. U.S. Tennis Association* that when determining if a joint employer relationship was adequately plead, courts should consider "whether the alleged employer paid the employees' salaries, hired and fired them, and had control over their daily

employment activities." *Id.* at 843 (internal quotations and original alterations omitted). Additionally, the Second Circuit emphasized that "[b]ecause the exercise of control is the guiding indicator, factors indicating a joint-employment relationship may vary depending on the case" and no one factor is decisive. *Id.* at 843.

The Second Amended Complaint does not allege that Defendant Chamber paid Plaintiffs' salaries. And, besides a conclusory allegation that "Chamber is involved in all aspects of hiring RIOC administrative staff," SAC ¶ 9, the Second Amended Complaint does not allege, or provide any facts supporting a reasonable inference, that Plaintiffs were hired by Defendant Chamber. *See McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 82 (S.D.N.Y. 2020) ("[c]onclusory, *ipse dixit* assertions" about the control between two entities "do not satisfy the pleading standards as articulated in *Twombly* and *Iqbal*") (citation omitted). In fact, the Second Amended Complaint concedes that the "*RIOC Board* appointed Haynes to the permanent position of CEO and President of RIOC." SAC ¶ 54 (emphasis added). Therefore, the first two considerations outlined in *Felder* weigh against finding a joint employment relationship.

Next, Plaintiffs again in a conclusory fashion allege that Defendant Chamber "is involved in terminating the employment of RIOC executives and employees." SAC ¶ 9. Here, Plaintiffs do provide some additional facts to support that allegation. Specifically, Plaintiffs allege that Defendant Chamber previously had terminated one RIOC employee and prevented the suspension of another RIOC employe. *See* SAC ¶ 52 ("RIOC's prior CEO and President, Susan Rosenthal, [] was terminated by the Chamber") and SAC ¶ 93 (Defendant Dissanayake and Bella Satra, both employees of Defendant Chamber, "prevented [Plaintiff] Haynes from suspending" an RIOC employee). However, Plaintiffs do not allege that Defendant Chamber fired them or that Defendant Chamber even had the power to fire them. *See Chavannes v. Bronx Parent Hous.*

13

*Network, Inc.*, No. 21-CV-5060, 2022 WL 4124762, at *5 (S.D.N.Y. Sept. 9, 2022) (explaining that allegations that the alleged joint employer had control generally over the direct employer is insufficient because it does not establish that the alleged joint employer had control of plaintiff's employment specifically). Here, the Second Amended Complaint specifically alleges that Defendant Visnauskas, an employee of HCR, and Howard Polivy, a RIOC Board Member—and not Defendant Chamber—were involved in placing Plaintiffs on paid administrative leave. SAC ¶ 190. Thus, this consideration also weighs against finding a joint employment relationship.

Finally, Plaintiffs' argument for asserting Title VII liability against Defendant Chamber relies on their vague and conclusory allegations that Defendant Chamber exercised a high level of control over Plaintiffs' employment. Plaintiffs point to the fact that Defendants Maldonado and Dissanayake, employees of Defendant Chamber, had "regularly held check-in meetings" with Plaintiffs and "provided them with directives on various issues," SAC ¶¶ 11–12, 9, 73, and that Defendant Chamber had significant control related to the Greenberg Traurig investigation and report, SAC ¶ 101, 120. However, these allegations are insufficient to justify extending Title VII liability to Defendant Chamber. In particular, the allegations are either conclusory or they do not support the level of "control over [Plaintiffs'] daily employment activities" needed to find a joint employer relationship. *Felder*, 27 F.4th at 843; *see also Britton*, 2022 WL 4332735, at *3 ("pleadings are either conclusory or insufficient to support" joint employer theory); *Byron v. Bronx Parent Hous. Network*, No. 1:21-CV-02568, 2023 WL 2585824, at *3 (S.D.N.Y. Mar. 20, 2023) ("The remaining allegations fail to suggest the existence of a joint employment relationship because they do not speak to whether the City had "power to pay [plaintiff's] salary, hire, fire, or otherwise control [her] daily employment activities."). When weighing all the relevant factors the

Second Circuit highlighted in *Felder*, 27 F.4th 834, there are not sufficient facts alleged to support the claim that Defendant Chamber was Plaintiffs' employer under the joint employer doctrine.

Plaintiffs argue that the question of whether an entity is an employer is a question of fact that is not suitable for determination at the pleadings stage. *See* Pls. Opp. at 8 (citing *Brown v. Daikin America Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)). However, the Second Circuit made clear in *Felder* that determining whether a pleading sufficiently alleges facts to find a joint employer is appropriate on a motion to dismiss. *See* 27 F.4th 845–47 (finding on a motion to dismiss that the complaint did "not cross the line from speculative to plausible on the essential Title VII requirement of an employment relationship"); *see also Chavannes*, 2022 WL 4124762, at *5 (dismissing the argument that "the question of whether a defendant could be considered a joint-employer" is inappropriate on a motion to dismiss because the issue "is not whether the plaintiff has proven that the [defendant] was her employer under some theory, but rather whether she has alleged sufficient facts to state a plausible claim that the [defendant] was her employer under a viable legal theory"). Plaintiffs have not done so here.

Therefore, the Court grants Defendants' motion to dismiss Plaintiffs' Title VII claims against Defendant Chamber on the ground that Plaintiffs failed to sufficiently allege that Defendant Chamber was their "employer" for purposes of Title VII liability.

## II.    Plaintiffs Have Not Alleged Sufficient Facts to Establish Liability Under Section 1983 With Respect to the Individual Defendants.

Plaintiffs assert claims for race discrimination, retaliation, and hostile work environment under Section 1983 against Defendants Maldonado, Dissanayake, Visnauskas, Lopez, Valella, and Fhala,[3] in their individual capacity. SAC ¶¶ 219–85.

---

[3] Defendant Fhala does not join in Defendants' motion to dismiss and has moved separately for dismissal. [ECF No. 112].

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

42 U.S.C. § 1983. To state a claim under Section 1983 a "plaintiff must establish that a person acting under the color of state law deprived him of a right guaranteed by the Constitution or the laws of the United States." *Vincent v. Annucci*, 63 F.4th 145, 151 (2d Cir. 2023). Once the color of law requirement is met, a plaintiff's claim parallels a Title VII claim. *Id.* However, Section 1983 requires allegations of "[p]ersonal involvement of defendants in [the] alleged constitutional deprivations." *Baltas v. Maiga*, 119 F.4th 255, 269 (2d Cir. 2024) (citation omitted). The Second Circuit has held that "personal involvement" means "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996); *see also Whitton v. Williams*, 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000).

Plaintiffs sufficiently allege that all the Individual Defendants were acting in their roles as state employees, for either Defendants Chamber or RIOC, and thus were acting under color of law when they engaged in the purported discriminatory conduct allegedly "depriving [Plaintiffs] of their rights under the Equal Protection Clause of the Fourteenth Amendment." *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 , 87–88 (2d Cir. 2015) (a state employee acting in his official capacity is acting "under color of state law"). Accordingly, since the threshold "color of law" requirement is satisfied, the Court examines Plaintiffs' Section 1983 claims for discrimination, retaliation, and hostile work environment under the same standards governing Title VII claims with the addition of the requirement of personal involvement by each Defendant.

As an initial matter, the allegations in the Second Amended Complaint that refer generally to the Individual Defendants and cite no specific facts, *see e.g.* SAC ¶¶ 224, 229, 231, are inappropriate and insufficient to support a claim for individual liability under Section 1983. The law is clear that Plaintiffs must plead individual and personal involvement by each Defendant. *See Baltas*, 119 F.4th at 269 (acknowledging that allegations of personal involvement by defendant in the alleged constitutional deprivations is required); *see also Fellah v. City Univ. of New York*, No. 20-CV-6423, 2022 WL 4619902, at *4 (S.D.N.Y. Sept. 30, 2022). Similarly, allegations in the Second Amended Complaint which attribute conduct generally to Defendants Chamber and RIOC, *see e.g.* SAC ¶¶ 61, 66–68, 97, 111, 206, and fail to identify the specific Individual Defendant(s) involved in the alleged conduct cannot support Plaintiffs' Section 1983 claims. *Baltas*, 119 F.4th at 269. Therefore, in determining the sufficiency of the Section 1983 claims, the Court scrutinizes only those allegations containing specific references to the purported conduct in which the Individual Defendant allegedly personally engaged or participated.

### A. Discrimination

To assert a claim of discrimination under Section 1983, Plaintiffs must allege that (1) they are members of a protected class, (2) they were qualified for their position, (3) they suffered an adverse employment action, and (4) there is "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023). Additionally, as explained above, Plaintiffs also must allege facts demonstrating "[p]ersonal involvement of defendants in alleged constitutional deprivations." *Baltas*, 119 F.4th at 269.

Plaintiffs allege, and Defendants do not dispute, that Plaintiffs are members of a protected class and that they are qualified for their positions. SAC ¶¶ 221–22. The parties dispute whether

there are sufficient allegations with respect to the element of their claim that (a) Plaintiffs suffered an adverse employment action and (b) that, if there was an adverse employment action the Individual Defendants were personally involved in, and (c) if so, whether there are allegations to support that the adverse employment action was motivated by discriminatory intent by the Individual Defendants. Defs. Mem. at 13–24; Pls. Opp at 12–25.

       i.    *Defendant Maldonado*

Plaintiffs argue that Defendant Maldonado's "interference with the general practice that [Plaintiffs in their roles as] RIOC CEO and General Counsel participate in selecting new RIOC Board Members provides for a claim" of discrimination under Section 1983 because Defendant Maldonado's actions resulted in a material decrease in Plaintiffs' responsibilities and this course of conduct departed from past practice when the RIOC management was led by CEOs who were white.  Pls. Opp. at 21 (citing SAC ¶¶ 132–33).

Plaintiffs' claim for discrimination under Section 1983 against Defendant Maldonado fails. As an initial matter, the allegations cited to in the Second Amended Complaint falls short of alleging Defendant Maldonado's individual participation in a constitutional deprivation.  The Second Amended Complaint alleges that the "Assistant Appointments Counsel in the Governor's Appointment Officer *at the behest of Defendant Maldonado, who was copied*" sent an email to Plaintiff Robinson" requesting that she draft recusal memos for two of the proposed new members" to " 'resolve' conflicts of interest concerns."  SAC ¶ 132 (emphasis added).  The other paragraph of the Second Amended Complaint that Plaintiffs cite to does not even mention Defendant Maldonado.  *See* SAC ¶ 133.  This singular allegation is extremely weak support for the proposition that Defendant Maldonado was personally involved in the alleged "interference with the general practice that the RIOC CEO and General Counsel participate in selecting new RIOC

Board Members," since it alleges nothing more than that Defendant Maldonado requested Plaintiff Robinson to draft documents. But even assuming this thin allegation is sufficient to allege individual participation by Defendant Maldonado, a Section 1983 claim still cannot stand against Maldonado.

Defendant Maldonado allegedly interfering with Plaintiffs' ability to help select new RIOC Board members does not amount to an adverse employment action. Plaintiffs' own allegation makes clear that Plaintiffs participation was merely a "general practice" and not a condition of Plaintiffs' employment or a specific job responsibility. *See* SAC ¶¶ 129, 130. Therefore, Defendant Maldonado's purported interference with this custom or practice cannot amount to a "materially adverse change" in the terms and conditions of Plaintiffs' employment sufficient to support a Section 1983 claim. *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755–56 (2d Cir. 2004) (actions alleged had no effect on the terms and conditions of plaintiff's employment). Additionally, even if the Court were to assume that this was a condition of Plaintiffs' employment rather than a general practice, the choice not to include Plaintiffs in the decision-making process of selecting new board members—assuming again that Maldonado played a personal role in it—would not rise past a non-actionable "mere inconvenience" or "alteration of job responsibilities." *Id.*; *see Littlejohn*, 795 F.3d at 312, n.10 ("[the defendant's] failure to include [the plaintiff] in the decision-making process of the merger did not 'significantly diminish' [the plaintiff's] responsibilities") (internal quotations and alterations omitted).

Thus, Plaintiffs' claims for discrimination under Section 1983 against Defendant Maldonado are dismissed.

ii.    *Defendant Dissanayake*

Defendants argue that Plaintiffs' claims for discrimination under Section 1983 brought against Defendant Dissanayake should be dismissed because Plaintiffs failed to make any argument or discuss these claims in their opposition brief.  Defs. Reply at 7.  The Court agrees. Plaintiffs failed to oppose Defendants arguments seeking dismissal of this claim and therefore have abandoned this claim.  *See Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) ("a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned"); *see also Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212, 227 (S.D.N.Y. 2022) (collecting cases).  Thus, Plaintiffs' claims for discrimination under Section 1983 against Defendant Dissanayake are dismissed.

iii.    *Defendant Visnauskas*

The Second Amended Complaint alleges a discrimination claim under Section 1983 against Defendant Visnauskas based on allegations that Defendant directed Haynes to dismiss the defamation counterclaim, SAC ¶ 84, and prohibited Plaintiffs from speaking to RIOC Board members without Visnauskas or Lopez present.  SAC ¶ 106.  Plaintiffs argue that these actions taken together constitute a "materially adverse change in the terms and conditions" of Plaintiffs' employment and are sufficient to plausibly state a claim.  *Id.*  Defendants argue that Defendant Visnauskas' actions cannot be considered a materially adverse change in the terms and conditions of Plaintiffs' employment because these acts did not impact any term of Plaintiffs' employment. Defs. Mem. at 18–19; Defs. Reply at 9.

The conduct attributed to Defendant Visnauskas does not amount to adverse employment action to sustain a Section 1983 claim.  While Plaintiffs state in conclusory fashion that the conduct resulted in a materially adverse change in the terms and conditions of Plaintiffs' employment,

Plaintiffs fail to explain in any level of detail how it impacted a condition, term, or privilege of Plaintiffs' employment. Defendants persuasively argue that the ability to file counterclaims could not be considered a term of Plaintiffs' employment because New York Public Authority Law Sections 2799-dddd(1) and § 2799-cccc(2) govern how RIOC can initiate litigation, and those guidelines makes clear that the ability to file a counterclaim is not a condition of Plaintiffs' employment. Defs. Mem. at 18–19. Additionally, Plaintiffs' opposition again concedes that filing counterclaims was simply a "general practice" which they were accustomed, not a condition or term of their employment. Pls. Opp. at 24.

Moreover, Plaintiffs' allegation that Defendant Visnauskas implemented a higher level of supervision by prohibiting Plaintiffs from speaking to RIOC Board members without her or Defendant Lopez present does not amount to an adverse employment action. *See Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 393 (S.D.N.Y. 2011) (plaintiff being subject to a period of heightened supervision does not rise to the level of an adverse employment action because "[e]xcessive scrutiny and close monitoring without more do not constitute adverse employment actions").

In short, the Second Amended Complaint fails to allege facts demonstrating the personal involvement of Defendant Visnauskas in any adverse employment action and thus Plaintiffs' claims for discrimination under Section 1983 against Defendant Visnauskas are dismissed.

   iv.   *Defendant Lopez*

The Second Amended Complaint similarly alleges a discrimination claim under Section 1983 against Defendant Lopez. Plaintiffs allege that Defendant Lopez directed Haynes to dismiss the defamation counterclaim, SAC ¶ 84, and prohibited Plaintiffs from speaking to RIOC Board members without Lopez or Visnauskas present. SAC ¶ 106. For the same reasons discussed above

with respect to the claims versus Defendant Visnauskas, the Court finds these identical allegations do not amount to adverse employment action with respect to Defendant Lopez.

Plaintiffs make further allegations with respect to Lopez in support of their section 1983 claim.  Specifically, the Second Amended Complaint alleges that Defendant Lopez (1) directed Greenberg Traurig "to whitewash discussions of discrimination" from the Greenberg Traurig investigation report, Pls. Opp. at 24; SAC ¶¶ 1, 114, 116, (2) delayed the release of the Greenberg Traurig investigation report, SAC ¶¶ 124–25, and (3) approved Defendant Fhala's request to appoint him to a committee while rejecting similar requests from other board members.  SAC ¶¶ 135–37, 144.  However, for the same reasons discussed above, Plaintiffs fail to allege facts or provide any allegations that connect any of these actions by Defendant Lopez to a term of Plaintiffs' employment or how that condition of employment was materially altered by this conduct.  Plaintiffs have not alleged that Defendant Lopez terminated their employment, demoted them, through either a decrease in their salary or a less distinguished title, or created a material loss of benefits.  *See Chukwuka v. City of New York*, 795 F. Supp. 2d 256, 260 (S.D.N.Y. 2011), *aff'd*, 513 F. App'x 34 (2d Cir. 2013).  Nor have Plaintiffs alleged facts, aside from wholly conclusory allegations, that demonstrate how the actions significantly diminished any material responsibilities of their employment.  *Id.*  Instead, Plaintiffs simply conclude that this alleged conduct was an adverse employment action.  That is not sufficient to maintain a claim under Section 1983.  *See Iqbal*, 556 U.S. at 678; *see also Walker v. Triborough Bridge & Tunnel Auth.*, No. 21-CV-474, 2021 WL 5401483, at *5 (S.D.N.Y. Nov. 18, 2021) (conclusory allegations are insufficient to push over the line from conceivable to plausible).  Plaintiffs' discrimination claim under Section 1983 against Defendant Lopez must be dismissed.

     *v.*   *Defendant Valella*

Plaintiffs allege that Defendant Valella was personally involved in an adverse employment action against Plaintiffs when he (1) led the push to hire the outside law firm to investigation the Former Employees' allegations, SAC ¶¶ 88, 90, (2) "was running things through—in communication with Chamber," SAC ¶ 101, and (3) "instructed Greenberg Traurig to remove and sanitize all discussion in the report that touched on Plaintiffs' accounts of the racial discrimination that they have experienced." SAC ¶¶ 114, 116; *see also* Pls. Opp. at 25.

Plaintiffs have not connected most of these allegations made against Defendant Valella to any condition or term of Plaintiffs' employment so as to constitute an adverse employment action. In particular, Plaintiffs fail to explain how their vague allegations that Defendant Valella was communicating with Chamber or that Defendant Valella instructed Greenberg Traurig to edit the investigation report materially changed a term of Plaintiffs' employment. But drawing all inferences in favor of Plaintiffs the non-moving parties the Court does find that the allegation that Defendant Valella pushed to hire an outside law firm to lead an investigation into Plaintiffs may support a claim of an adverse employment action.

The Second Circuit has held "that administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action." *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006). In announcing this rule, the Second Circuit reasoned that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." *Id*. The Second Circuit later clarified that this "rule is not an absolute one" and in certain circumstances this conduct "may rise to the level of an adverse employment action." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Joseph*, 465 F.3d at 92 n.1). The

Second Circuit explained that the "relevant question" is whether the defendant merely "applied reasonable disciplinary procedures to [the plaintiff] or if the[y] exceeded those procedures and thereby changed the terms and conditions of employment." *Id.*  Accepting Plaintiffs allegations as true and drawing all inferences in favor of Plaintiffs, the allegations that Defendant Valella pushed for an investigation by an outside law firm which was "unprecedented," SAC ¶ 87, alleges enough facts to support an inference that this exceeded the standard disciplinary procedures, and therefore could amount to an adverse employment action.

However, that is not the end of the inquiry.  To state a discrimination claim under Section 1983, Plaintiffs must also allege facts that provide "at least minimal support for the proposition that the [defendant] was motivated by discriminatory intent." *Buon*, 65 F.4th at 79.  Plaintiffs assert no direct evidence of racial discrimination by Defendant Valella and instead solely rely on the argument that an inference of racial animus can be drawn because "the push to hire an outside law firm was a departure from the general practice in past RIOC administrations (with white CEOs at the helm)."  Pls. Opp. at 25.

Plaintiffs at this stage are not required to "present detailed evidence about comparators" and instead only need assert "factual allegation that similarly situated comparators exist." *Mooney v. City of New York*, No. 18-CV-328, 2018 WL 4356733, at *3 (S.D.N.Y. Sept. 12, 2018) (citing *Vega*, 801 F.3d at 86).  So while Plaintiffs allegations of similarly situated comparators are sporadic and rather vague, the Court recognizes that the burden at this stage for alleging comparators is rather low and the allegations throughout the complaint, *see e.g.* SAC ¶¶ 2, 74, 91, at this stage are sufficient.  However, Plaintiffs claim against Defendant Valella fail nonetheless because Plaintiffs have completely failed to tie the more favorable treatment of these similarly situated comparators to conduct of Defendant Valella.  For example, Plaintiffs allege that

"unprecedented actions taken against Plaintiffs were never taken against previous, similarly situated White RIOC executives," SAC ¶ 2, and that "Plaintiffs were also subjected to repeated unwarranted and frivolous investigations, to which none of their White predecessors were ever subjected," SAC ¶ 74, and previously state agencies conducted investigations into the alleged wrongdoing of other RIOC executives including Rosenthal and O'Reilly. SAC ¶ 91. But these allegations do not mention Defendant Valella and do not attribute to Defendant Valella any of the more favorable treatment allegedly afforded to the purported comparators. As such, Plaintiffs allegations cannot support the inference of racial animus held by Defendant Valella. *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) ("the requisite discriminatory intent must be held by the state official in his individual capacity . . . liability for an Equal Protection Clause violation under § 1983 requires personal involvement by a defendant, who must act with discriminatory purpose"); *see also Haggood v. Rubin & Rothman*, *LLC*, No. 14-CV-3L, 2014 WL 6473527, at *12 (E.D.N.Y. Nov. 17, 2014) (Plaintiffs failed to allege "how they were treated differently *by defendants*") (emphasis added). While the Court must draw all reasonable inferences in favor of Plaintiffs to infer that Defendant Valella held a racial animus against Plaintiffs, Plaintiffs' allegations base the more favorable treatment of similarly situated comparators on unnamed individuals. *See* SAC ¶ 2, 60, 62, 74, 129. There are no allegations that Defendant Valella engaged in that more favorable conduct and it would be illogical for the Court to draw that inference and it would be asking the Court to assume facts not plead.

Plaintiffs have failed to allege facts to infer that Defendant Valella specifically and individually acted with discriminatory intent and thus, Plaintiffs have failed to state a claim for discrimination under Section 1983 with respect to Defendant Valella.

### B. Retaliation

"[F]or a retaliation claim under § 1983 to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination." *Vega*, 801 F.3d at 91. The Supreme Court has held that with respect to retaliation claims "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.' " *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006)). Accordingly, "an action need not affect the terms and conditions of a plaintiff's employment for purposes of a retaliation claim." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 n.6 (2d Cir. 2010). Additionally, Plaintiffs must plead "[p]ersonal involvement of defendants." *Baltas*, 119 F.4th at 269.

#### i.    Defendant Maldonado

Plaintiffs allege that they engaged in protected activity, specifically their complaints about racial discrimination and the hostile work environment made in the weekly Red/Green Reports and in emails, SAC ¶¶ 64–71, and that Defendant Maldonado was aware of this protected activity, SAC ¶¶ 1, 65, 107, 110. *See generally* Pls. Opp. at 20. In moving to dismiss Defendants argue that Plaintiffs complaints were not protected activity because the complaints raised to Defendant Maldonado were about the conduct of non-employee third parties, most particularly the reporter Stone, and were not opposing unlawful employment practices of their employer. Defs. Reply at 3. Plaintiffs assert in response that while their complaints did involve Stone's conduct, they were also about the failure of their employer to do anything to protect Plaintiffs from this conduct and that Defendants' failure to provide remedial action was creating and fostering a hostile work environment. Pls. Opp. at 20. Accepting Plaintiffs allegations as true and granting all inferences

in favor of Plaintiffs, Plaintiffs sufficiently alleged that they engaged in protected activity because they opposed what they reasonably believe was a violation of Title VII by their employer, even if that claim ultimately fails. *See Cooper v. N.Y. State Dep't of Lab.*, 819 F.3d at 680–81 (2d Cir. 2016); *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) ("[T]o prevail on a retaliation claim, the plaintiff need not prove that his underlying complaint of discrimination had merit, but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful.") (cleaned up).

To state a Section 1983 retaliation claim, Plaintiffs must also allege an adverse employment action that Defendant Maldonado was personally involved in perpetrating. Plaintiffs allege that they suffered adverse employment action when Defendant Maldonado (1) "scolded [Plaintiff] Robinson for attempting to defend herself against" allegations made against her, SAC ¶ 83, (2) "suggested that [Plaintiff] Robinson accept a demotion," SAC ¶ 112, and (3) "interfered with the general practice of the RIOC CEO and General Counsel participating in the section process of RIOC Board Members." SAC ¶ 132; *see* Pls. Opp. at 20.

To begin, an allegation that Defendant Maldonado scolded Plaintiff Robinson does not amount to an adverse employment action sufficient to give rise to Section 1983 liability. *See Ziyan Shi v. N.Y. Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 338–39 (S.D.N.Y. 2019); *see Richards v. Dep't of Educ. of the City of N.Y.*, No. 21-CV-338, 2022 WL 329226, at *17 (S.D.N.Y. Feb. 2, 2022) (being "screamed at . . . micromanaged and publicly derided . . . fall into the category of petty slights, minor annoyances, and simple lack of good manners that do not constitute retaliatory action"); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 848 (S.D.N.Y. 2013) (holding that publicly yelling at plaintiff on the sales floor did not constitute an adverse employment action); *Martinez v. N.Y.C. Dep't of Educ.*, No. 04-CV-2728, 2008 WL 2220638, at

*12 (S.D.N.Y. May 27, 2008) ("[I]ncidents where [a supervisor] publicly yelled at [plaintiff] for various reasons or called him 'shit' . . . constitute, as a matter of law, the sorts of petty slights and personality conflicts that are not actionable.").

Moreover, Plaintiffs' allegation that Pei Pei Cheng allegedly offered Plaintiff Robinson a different position is not an adverse employment action *by Defendant Maldonado*.  Significantly, the Second Amended Complaint concedes that it was not Defendant Maldonado who made this offer to Plaintiff Robinson.  SAC ¶ 112.  Therefore the personal involvement required to sustain a Section 1983 claim is lacking here.  *See Zdziebloski v. Town of E. Greenbush, N.Y.*, 336 F. Supp. 2d 194, 202 (N.D.N.Y. 2004) ("Involvement in discussions that lead to a decision is not personal involvement under § 1983."); *see also Snead v. City of New York*, 463 F. Supp. 3d 386, 398 (S.D.N.Y. 2020) ("An officer's mere presence at the scene of a stop or arrest generally does not constitute sufficient personal involvement for § 1983 liability."), *reconsideration denied*, No. 16-CV-9528, 2021 WL 861060 (S.D.N.Y. Mar. 8, 2021).  Even if Defendant's presence on this call were sufficient to establish personal involvement, the mere offer of a different position does not amount to an adverse employment action, because no action occurred.  Plaintiff was not demoted, transferred, or reassigned.  And, even if the Court were to construe the allegation in favor of Plaintiffs to be a threat of demotion instead of an offer of a different position, it is still insufficient to constitute an adverse action.  *See Myers v. Doherty*, No. 21-CV-219, 2021 WL 5599502, at *8 (S.D.N.Y. Nov. 30, 2021), *aff'd*, No. 21-3012-CV, 2022 WL 4477050 (2d Cir. Sept. 27, 2022) ("The Court is unaware of authority that notification of such a transfer, where the transfer does not materialize, qualifies as an adverse employment action."); *see also Durkin v. Verizon New York, Inc.*, 678 F. Supp. 2d 124, 139 (S.D.N.Y. 2009) ("the threat to demote Plaintiff does not constitute an adverse employment action and therefore cannot support Plaintiff's claims of retaliation").

Finally, Plaintiffs allegations that Defendant Maldonado "interfered with the general practice of the RIOC CEO and General Counsel participating in the section process of RIOC Board Members," SAC ¶ 132; Pls. Opp. at 20, does not amount to an action that would "well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90. As the Court explained above, the single allegation included in the Second Amended Complaint to support this claim is likely insufficient to establish Defendant Maldonado's personal involvement. *See supra* Sec. II(A)(i). Even assuming Plaintiffs' allegations are enough to establish personal involvement by Defendant Maldonado deciding to not include Plaintiffs in meetings or discussions about selecting new RIOC board members does not rise to the level of conduct that would dissuade a reasonable worker from making a charge of discrimination. *See Ziyan Shi v. New York Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 339 (S.D.N.Y. 2019) (not being included on an e-mail does not rise to the level of an adverse employment action in the context of a retaliation claim); *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 461 (S.D.N.Y. 2023) ("Additionally, exclusion from meetings, failing to be included on emails, and increased scrutiny do not amount to adverse employment actions" for purposes of a retaliation claim).

Plaintiffs have failed to sufficiently allege facts that plausibly support that Defendant Maldonado was personally involved in the alleged constitutional deprivations claimed by Plaintiffs. Accordingly, Plaintiffs' retaliation claims against Defendant Maldonado under Section 1983 must be dismissed.

  *ii. Defendant Dissanayake*

The Second Amended Complaint alleges that Plaintiffs complained to Defendant Dissanayake about conduct by the reporter Stone and other non-employees or third parties, SAC

¶ 65, and that these complaints were protected activity.  SAC ¶ 230.  Plaintiffs further allege that that Defendant Dissanayake "directed Plainitffs to 'stand down,' and not contact outside counsel or legal advice or crisis management advice," SAC ¶ 73, and that she "led the push to hire outside law firm" to investigate the Former Employees' allegations against Plaintiffs."  SAC ¶ 88.

As an initial matter the Court rejects, for the same reasons discussed above, Defendants' argument that Plaintiffs' complaints to Defendant Dissanayake about their harassment by third parties do not amount to awareness by Dissanayake of Plaintiffs engaging in a protected activity. The Court finds that Plaintiffs' allegations are sufficient to establish that Plaintiffs engaged in protected activity.  *See Cooper*, 819 F.3d at 680–81; *see also Rivera*, 743 F.3d at 24.

Moreover, for the same reasons the Court found the allegation that Defendant Valella pushed to hire an outside law firm to lead an investigation into Plainitffs may at this stage support an adverse employment action for purposes of a Section 1983 discrimination claim, the Court finds that the same allegation with respect to Defendant Dissanayake could amount to an adverse employment action sufficient to support a retaliation claim.  *See supra* Sec. II(A)(v).  Even assuming that Plaintiffs' other allegation that Dissanayake "directed Plaintiffs to 'stand down,' " and not contact outside sources for "legal advice or crisis management advice" regarding Stone, SAC ¶ 73, amounted to conduct that would "dissuade a reasonable worker from making or supporting a charge of discrimination," *Vega*, 801 F.3d at 90, the retaliation claim against Defendant Dissanayake still fails.

Plaintiffs have not sufficiently alleged a causal connection between the actions taken by Dissanayake and Plaintiffs engaging in protected activity.  The final element of retaliation claim, whether under a Title VII or Section 1983, is a causal connection between the protected activity and the materially adverse action.  *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 239 (2d Cir.

2024).  To state a claim Plaintiffs "must plausibly allege that retaliation was a but-for cause of the [Defendant's] adverse action."  *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quotation marks and citation omitted).  In establishing but-for causation, Plaintiffs do not need to demonstrate "proof that retaliation was the only cause" of the adverse action.  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  Moreover, causation can be "inferred through temporal proximity [of the adverse action] to the protected activity."  *Duplan*, 888 F.3d at 625.

Plaintiffs argue that the timing of Defendant Dissanayake's actions sufficiently establishes causation because "the direction to stand down came approximately one month after Plaintiffs began making weekly complaints to Chamber" and "the push to hire an outside law firm occurred just months" after Plaintiffs began making monthly complaints to Defendant Chamber.  Pls. Opp. at 22.  However, Plaintiffs argument makes an inappropriate leap based on the actual allegations in the Second Amended Complaint.  The Second Amended Complaint alleges that Plaintiffs made complaints to Defendant Chamber "as far back as in or about October 2020."  SAC ¶ 64.  Plaintiffs further allege that throughout Plaintiff Haynes' tenure he made similar complaints to Defendant Dissanayake.  SAC ¶ 65.  But besides general allegations that Plaintiffs sent weekly Red/Green Reports containing complaints to *Defendant Chamber*, in the months of January and February of 2022, there are no allegations linking the timing of Defendant Dissanayake's purported adverse action with Plaintiffs' protected activity known to Defendant Dissanayake sufficient to establish a causal connection.  *See Royall v. City of Beacon*, No. 24-CV-3, 2024 WL 4266546 (S.D.N.Y. Sept. 23, 2024) (dismissing retaliation claim based on temporal proximity when plaintiffs filed to allege when he raised complaints to defendant).  Plaintiffs cannot rely on allegations that *Defendant Chamber* had knowledge of their protected activity, *see e.g.* SAC ¶¶ 67–69, on certain dates that

are close in time to conduct *by Defendant Dissanayake* to support causation based on timing proximity. *See Williams v. Time Warner Inc.*, No. 09-CV-2962, 2010 WL 846970, at *5 (S.D.N.Y. Mar. 3, 2010), *aff'd*, 440 F. App'x 7 (2d Cir. 2011) (plaintiff "fails to plead that the 'actual decisionmaker' responsible for [ensuing] the adverse actions was aware of her protected activity, as the law requires").

The Second Amended Complaint alleges facts that demonstrate Defendant Dissanayake had knowledge of these complaints generally, but it does not allege facts to allow the Court to find causation based on temporal proximity.  It is possible that Defendant Dissanayake received the same complaints on the same or similar dates that the Second Amended Complaint alleges Defendant Chamber received them, but the Court cannot re-write Plaintiffs' Second Amended Complaint (which has been amended several times) or assume that to be true.  Plaintiffs must plead facts demonstrating that Defendant Dissanayake, individually, learned of Plaintiffs' protected activity and facts alleging when she learned of Plaintiffs' protected activity in order to plausibly allege causation under a theory of temporal proximity.  Accordingly, Plaintiffs have not alleged facts to support Section 1983 liability with respect to Defendant Dissanayake and therefore this retaliation claim must be dismissed.

  *iii. Defendant Visnauskas*

Plaintiffs allege that Defendant Visnauskas "informed plaintiffs that they would be placed on paid administrative" during the pendency of an investigation, SAC ¶¶ 190–91, and they argue that this constitutes an adverse action for purposes of their retaliation claim.  Pls. Opp. at 23. Defendants move to dismiss the retaliation claim against Visnauskas arguing that being placed on paid administrative leave without more does not constitute an adverse employment action.  Defs. Reply at 7 (citing *Joseph v. Leavitt*, 465 F.3d 91).  As the Court has already explained, the Second

Circuit clarified in *Brown v. City of Syracuse* that "that a suspension with pay may in some circumstances, rise to the level of an adverse employment action" and the "relevant question" is whether the defendant "has simply applied reasonable disciplinary procedures to an employee or if the [defendant] has exceeded those procedures and thereby changed the terms and conditions of employment." 673 F.3d at 150. Therefore, "[p]aid suspension during an investigation could [] potentially be adverse if the employer takes actions beyond an employee's normal exposure to disciplinary policies." *Id.* Here, drawing all reasonable inferences in favor of Plaintiffs as the non-moving party, Defendant Visnauskas placing Plaintiffs on administrative leave during the pendency of an investigation could amount to an adverse employment action since Plainitffs have alleged that this action went beyond applying the normal disciplinary procedures. *See* SAC ¶ 193 ("This is the first time Plaintiffs have ever been placed on administrative leave as a result of an investigation . . . Plaintiffs have faced twelve other investigations . . . but Plaintiffs were never put on leave.").

Defendants also challenge the retaliation claim for failing to plead facts sufficient to support the causation element. Defs. Mem. at 21. Plaintiffs again argue that the temporal proximity between the protected activity (filing the initial complaint in this action on September 12, 2023 that named Defendant Visnauskas, SAC ¶ 155) and the adverse action (being placed on paid administrate leave on January 16, 2024 during the pendency of an investigation, SAC ¶ 190) establishes causation. Pls. Opp. at 23. Defendants argue this time period of four months between the protected activity and Plaintiffs being placed on leave is too large to support an inference of causation based on temporal proximity. Defs. Reply at 8.[4]

---

[4] Plaintiffs also try to point to the filing of the Amended Complaint, which would provide only a one month gap in time, however, Defendant Visnauskas was named in the original complaint, and thus the filing of the amended complaint does not change the analysis for retaliatory conduct by Defendant Visnauskas.

When a party relies on "the mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action, courts uniformly hold that the temporal proximity must be very close." *Adams v. Ellis*, No. 09-cv-01329, 2012 WL 693568, at *16 (S.D.N.Y. Mar. 2, 2012), *aff'd*, 536 F. App'x 144 (2d Cir. 2013). The four month gap between Plaintiff filing the initial suit and Defendant Visnauskas action of placing Plaintiffs on administrative leave is too attenuated to support an inference of retaliatory causation based on temporal proximity alone. *See Vora v. New York City Dep't of Educ.*, No. 22–CIV-10891, 2024 WL 1116312, at *11 (S.D.N.Y. Mar. 14, 2024) ("the more than four month gap between the email and the alleged retaliatory action – the revocation of her reasonable accommodation – is too long to permit an inference of retaliatory animus"); *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) ("no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference."); *Graham v. Macy's, Inc.*, No. 14-CV-3192, 2016 WL 354897, at *23 (S.D.N.Y. Jan. 28, 2016) ("[C]ourts in this Circuit generally hold that a gap longer than two months severs the inferred causal relationship."), *aff'd*, 675 F. App'x 81 (2d Cir. 2017).

Therefore, Plaintiffs have failed to sufficiently plead a claim for retaliation under Section 1983 against Defendant Visnauskas and this claim must be dismissed.

iv.    *Defendants Lopez and Valella*

Defendants argue that Plaintiffs' claims for retaliation under Section 1983 brought against Defendants Lopez and Valella should be dismissed because Plaintiffs failed to make any argument or discuss these claims in their opposition brief. Defs. Reply at 7, 9. The Court agrees. Plaintiffs failed to oppose Defendants' arguments seeking dismissal of these claims against these defendants and therefore have abandoned these claims. *See Jackson.*, 766 F.3d at 194 ("a court may, when

34

appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned"); *see also Pincover*, 592 F. Supp. 3d at 227 (collecting cases). Therefore, Plaintiffs' claims for retaliation under Section 1983 against Defendants Lopez and Valella are dismissed.

### C.  *Hostile Work Environment*

Defendants move to dismiss Plaintiffs' hostile work environment claims brought under Section 1983 against the Individual Defendants.  *See* SAC ¶¶ 236–242.

Defendants argue that the allegations lodged against the Individual Defendants cannot support the claim that these Defendants were personally involved in creating a work environment that was "severely permeated with discriminatory intimidation, ridicule, and insult."  Defs. Mem. at 16.  In response, Plaintiffs argue the same identical single sentence, that cites to no factual allegations for support, for all five Individual Defendants.  Pls. Opp. 21–25.  This generalized copy and paste sentence reads: "[Defendant's] actions undermined Plaintiffs, prevented them from remedying RIOC's toxic and hostile work environment, and at a minimum treated them 'less well' than white predecessors."  *See* Pls. Opp. 21–25.  This argument is wholly conclusory.  Plaintiffs arguably abandon their Section 1983 hostile work environment claims, *see Jackson.*, 766 F.3d at 194, by making no substantive argument about the sufficiency of their federal law claim, citing only to the lower standard applicable for their NYCHRL and NYSHRL.  Nonetheless, the Court briefly explains why Plaintiffs' Section 1983 hostile work environment claims fail.

"To establish a hostile work environment under [] Section 1983, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Littlejohn*, 795 F.3d at 320–21 (internal citations and quotations omitted);

*see also Royall v. City of Beacon*, No. 24-CV-3, 2024 WL 4266546, at *18 (S.D.N.Y. Sept. 23, 2024).  A plaintiff must also plausibly allege "that the hostile work environment was caused by animus towards [him or her] as a result of [his or her] membership in a protected class." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011) (citation omitted).

The Second Circuit has held that "[p]roving the existence of a hostile work environment involves showing both 'objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). In determining whether a plaintiff has plausibly alleged an actionable hostile environment, courts must look at the "totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Littlejohn*, 795 F.3d at 321 (internal citation and quotations omitted).  To support a Section 1983 claim against the Individual Defendants, Plaintiffs must allege facts "that the individual was <u>personally involved</u> in" the alleged deprivation of rights.  *Abadi*, 705 F. Supp. 3d at 185 (underlining in original).

The allegations in the Second Amended Complaint which specifically identify conduct of the Individual Defendants amount to a few discrete episodic events for each Individual Defendant. *See* SAC ¶¶ 73 (Dissanayake), 83 (Maldonado), 84 (Lopez and Visnauskas), 88 (Dissanayake and Valella), 90 (Valella), 93 (Dissanayake), 101 (Valella), 106 (Lopez and Visnauskas), 112 (Maldonado), 114 (Lopez and Valella), 137 (Lopez), 178 (Visnauskas), 190 (Visnauskas).  The conduct alleged in these specific instances do not rise to the level of severity required for a single incident or a few episodic incidents with respect to each Individual Defendant to create liability

for a hostile work environment. *See Gonzalez v. City of New York,* 377 F. Supp. 3d 273, 299 (S.D.N.Y. 2019) (a single incident unless extraordinarily severe is insufficient to state a hostile work environment claim); *see also Miller-Sethi v. City Univ. of New York*, No. 21-CV-8591, 2023 WL 419277, at *7–8 (S.D.N.Y. Jan. 26, 2023) (allegations that defendant undermined plaintiff's authority in the workplace, used microaggression, and sent a "scathing email" were episodic and not severe or pervasive enough to support a hostile work environment claim). Thus, even if Plaintiffs did not abandon these claims by failing to address them in opposition to Defendants' motion to dismiss, these allegations are nonetheless insufficient to support a claim for hostile work environment under Section 1983 against all five of the Defendants.

The remaining allegations in the Second Amended Complaint demonstrate sporadic complaints Plaintiffs sent to the Individual Defendants via email about the conduct of other others and or general complaints about the allegedly hostile work environment. *See* SAC ¶¶ 65 (Haynes "made similar complaints" to Dissanayake and Maldonado), 107 (Plaintiffs complained to Visnauskas, Lopez, and Valella that a third party made false statements about RIOC staff), 110 (Plaintiffs complained to Maldonado and Dissanayake about the work environment), 151 (Haynes emailed Visnauskas, Lopez, Valella, Dissanayake and Maldonado complaining about Fhala's behavior). These are also insufficient to support Plaintiffs' claim of a hostile work environment under Section 1983 because Plaintiffs failed to allege personal involvement by the Individual Defendants in any conduct creating the hostile work environment. *See Fellah*, No. 20-CV-6423, 2022 WL 4619902, at *6 (S.D.N.Y. Sept. 30, 2022) (dismissing hostile work environment claims under Section 1983 because allegations did not plead personal involvement and at most alleged a failure to take sufficient action to remedy plaintiff's work situation); *Alfano v. Costello*, 294 F.3d 365, 347 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997)

(allegations must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive' ").

For these reasons, Plaintiffs' hostile work environment claims under Section 1983 are dismissed.

## III.    NYSHRL and NYCHRL Claims

The Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh causes of action purport to assert various state and city law claims. Specifically, Plaintiffs assert claims for race discrimination, retaliation, and hostile work environment in violation of the NYSHRL and the NYCHRL against Defendants Maldonado, Dissanayake, Visnauskas, Lopez, and Valella. SAC ¶¶ 219–85.

Because, for the reasons outlined above, Plaintiffs' federal law claims are dismissed, the Court declines to exercise supplemental jurisdiction over the purported state law claims against these Individual Defendants and does not consider the merits of these claims. 28 U.S.C. § 1367(c)(3); *see also Britton*, 2022 WL 4332735, at *4. The Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh causes with respect to the moving Individual Defendants are therefore dismissed without prejudice to renewal in state court.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED as to the moving Defendants. Plaintiffs' claims against the non-moving Defendants remain pending in front of this Court. Here, Plaintiffs were on notice of the potential deficiencies in their Second Amended Complaint by way of Defendants' pre-motion letter, [ECF No. 98], the Court provided Plaintiffs with an opportunity to amend their complaint in response to the arguments raised by Defendants' pre-motion letter, [ECF No. 100], and Plaintiffs waived the opportunity to amend their complaint, [ECF No. 101], therefore the Court finds that granting leave to amend here would be futile. *See*

*Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (citing *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006)).

The Clerk of Court is respectfully requested to terminate the motion pending at docket entry 102.

**SO ORDERED.**

**Date:  March 27, 2025**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**