USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHELTON J. HAYNES AND GRETCHEN
K. ROBINSON,

                              Plaintiffs,

              -against-

EXECUTIVE CHAMBER FOR THE
OFFICE OF THE GOVENOR OF NEW
YORK, ROOSEVELT ISLAND
OPERATING CORPORATION, ROGER
MALDONADO, TANIA DISSANAYAKE,
RUTHANNE VISNAUSKAS, DIANA
LOPEZ, ALEJANDRO VALELLA, and BEN
FHALA,

                              Defendants.

1:23-cv-08051 (MKV)

**OPINION AND ORDER
GRANTING DEFENDANT
FHALA'S MOTION**

MARY KAY VYSKOCIL, United States District Judge:

        Plaintiffs Shelton J. Haynes and Gretchen K. Robinson (collectively, "Plaintiffs"), brought

this action against Defendants Executive Chamber for the Office of the Governor of New York

(the "Chamber") and Roosevelt Island Operating Corporation ("RIOC") asserting discrimination

and retaliation claims under Title VII and against Individual Defendants Roger Maldonado, Tania

Dissanayake, Ruthanne Visnauskas, Diana Lopez, Alejandro Valella, and Ben Fhala alleging race

discrimination, retaliation, and hostile work environment claims under Title 42, United States

Code Section 1983 ("Section 1983"), the New York State Human Rights Law ("NYSHRL"), and

the New York City Human Rights Law ("NYCHRL").  The Court previously granted a motion to

dismiss on behalf of Defendants Chamber, Maldonado, Dissanayake, Visnauskas, Lopez, and

Valella.  [ECF No. 120].

        Before the Court now is a motion by Defendant Ben Fhala to dismiss the Second Amended

Complaint.  [ECF No. 112].  Defendant Fhala moved to dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure [ECF No. 111], however, Defendant Fhala previously filed an Answer in this action.  [ECF No. 96].  As such, the Court construes and resolves the pending motion pursuant to Rule 12(c).[1]  For the reasons discussed below Defendants' motion is GRANTED.

## BACKGROUND[2]

### I.    Factual Background

Plaintiff Haynes was the Chief Executive Officer and President of RIOC.  SAC ¶ 7.  Plaintiff Robinson was the Vice President and General Counsel of RIOC.  SAC ¶ 8.

RIOC is a New York State public benefit corporation responsible for operating Roosevelt Island, New York.  SAC ¶ 10.  RIOC has a Board of Directors which governs RIOC, sets RIOC policy, and is responsible for the business affairs of RIOC.  SAC ¶ 23.  The RIOC Board is composed of nine members including the Commissioner of the New York State Division of Housing and Community Renewal (or his or her designee); the New York State Budget Director (or his or her designee); and seven public members appointed by the Governor with the advice and consent of the Senate.  SAC ¶ 23.  Defendant Fhala was one of the seven public members and he was nominated and confirmed on or about June 9, 2023 to serve as a RIOC Board Member.  SAC ¶ 17.

---

[1] The Second Circuit has made clear that a district court can and should consider an untimely Rule 12(b)(6) pre-answer motion to dismiss as a Rule 12(c) motion for judgment on the pleadings. *See Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126–27 (2d Cir. 2001) ("Thus, here, even if [the defendant] had answered the complaint, his motion to dismiss, although styled as a Rule 12(b)(6) motion, could and should have been considered as a Rule 12(c) motion for judgment on the pleadings.").

[2]  The facts are taken from the Second Amended Complaint, ("SAC," ECF No. 81]), and are accepted as true for purposes of the motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true."); *see also Patel*, 259 F.3d at 126 ("[t]he standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

The New York State Inspector General ("NYSIG") is responsible for receiving and investigating complaints concerning allegations of corruption, fraud, criminal activity, conflicts of interest or abuse in any entity under its jurisdiction, including New York State public benefit corporations. SAC ¶ 18. The New York State Office of Employee Relations ("OER") is the New York State entity charged with investigating complaints of employment-related protected class discrimination in agencies and departments over which the Governor has executive authority. SAC ¶ 19. The New York State Commission on Ethics and Lobbying in Government ("COELIG") was created to ensure compliance with the ethics and lobbying laws and regulations of the State and has jurisdiction over New York State public benefit corporations. SAC ¶ 20. The New York State Department of Human Rights ("NYSDHR") is the State agency charged with enforcing New York State's Human Rights Law. SAC ¶ 21. The Office of the New York State Comptroller is responsible for providing independent fiscal oversight on the State and local finances. SAC ¶ 22.

Plaintiffs allege that the prior CEO and President of RIOC, Susan Rosenthal, was terminated by the Defendant Chamber following an investigation by the OER, which revealed numerous instances in which Rosenthal spoke to subordinates using racist and sexually inappropriate language. SAC ¶ 52. Plaintiff Haynes was appointed to the role of acting President of RIOC by the RIOC Board and later appointed to the permanent position of CEO and President of RIOC. SAC ¶¶ 53–54. Plaintiffs, both of whom are African American, SAC ¶ 1, allege that they have received an unprecedented level of scrutiny and hostility because of their race since the promotion of Plaintiff Haynes to CEO and President of RIOC. SAC ¶¶ 55–56. On June, 16, 2023, Chamber and HCR received a letter from Plaintiffs' counsel requesting a litigation hold and citing racial discrimination and retaliation. SAC ¶ 141.

Plaintiffs allege that approximately one month after Defendant Fhala was confirmed to the RIOC Board, he sent an email, on which Plaintiffs were not included, requesting that he be added to the Audit Committee and asking to create a new committee for transportation and parking. SAC ¶ 143. Plaintiffs further allege that Defendant Fhala ignored the practice of how an RIOC Board Member should contact stakeholders. SAC ¶¶ 145–46. Plaintiffs also allege that Defendant Fhala contacted sister agencies and other RIOC staff without first reaching out to Plaintiff Haynes. SAC ¶ 147. Plaintiffs allege that Defendant Fhala sent an email with respect to an upcoming RIOC Board meeting that accused Plaintiff Robinson of deliberately delaying the upcoming RIOC Board meeting. SAC ¶ 148. This email was sent to the RIOC Board, Plaintiff Haynes, Plaintiff Robinson, the RIOC Legal Department, Senator Krueger, Assemblymember Seawright, and others, which allegedly breached the general practice of not sending emails pertaining to internal RIOC Board matters to non-RIOC parties. SAC ¶ 148.

At the subsequent RIOC Board meeting, on or about August 7, 2023, Defendant Fhala allegedly accused Plaintiff Haynes of blocking his appointment to committee positions and accused Plaintiff Robinson of misrepresenting the RIOC Board bylaws to prevent him from being appointed to committee positions. SAC ¶ 149. Plaintiffs claim that Defendant Fhala acted in an antagonistic manner and was rude and condescending. SAC ¶ 149. Shortly thereafter, Defendant Fhala emailed Lopez, Visnauskas, Valella, Robinson and other staff in RIOC's Legal Department stating that he did not believe he was under an obligation to keep internal RIOC matters confidential. SAC ¶ 151. Plaintiff Haynes emailed Plaintiff Robinson and Visnauskas, Lopez, Valella, Dissanayake, and Maldonado in response to complain about Defendant Fhala's disrespectful and condescending behavior. SAC ¶ 151. Plaintiffs allege that despite being instructed otherwise, Defendant Fhala continued to ignore the standard procedures by which RIOC

Board Members were expected to abide, including communicating with Plaintiffs in an antagonistic manner and criticizing and demeaning Plaintiffs. SAC ¶¶ 152–53

Plaintiffs further allege that within approximately one week of the filing their initial complaint in this action, September 12, 2023, Defendant Fhala, who was not named in the original complaint, had taken steps to reduce the scope of Plaintiffs' authority, initiated a new frivolous investigation against them, and criticized Plaintiffs to the media. SAC ¶ 155. In particular, Defendant Fhala sought an "emergency" board meeting to reduce Plaintiff Haynes' monetary approval thresholds. SAC ¶ 156. Plaintiffs further allege that Defendant Fhala initiated another investigation into Plaintiffs, by emailing both the office of NYSIG and the COELIG to suggest that Plaintiffs' procurement of a contract with a digital reputation management company was improper. SAC ¶¶ 163–67. Plaintiffs further allege that Defendant Fhala has sent several emails critical of Plaintiff Haynes to a local blogger Rick O'Conor and local elected officials. SAC ¶¶ 168–74.

Plaintiffs further allege that Defendant Fhala showed up at RIOC headquarters and demanded meetings with staff. SAC ¶¶ 172, 175–76. Plaintiffs allege that Defendant Fhala has repeatedly "scolded" Plaintiffs and spoken to them in a condescending, derogatory manner. SAC ¶ 177.

On or about December 8, 2023, Plaintiffs filed the amended complaint in this action, and added the Chamber, RIOC, and Fhala as defendants. SAC ¶ 180. Thereafter, on or about January 12, 2024, Defendant Fhala sent an email asserting that at the upcoming RIOC Operations Advisory Committee meeting, he planned to publicly scrutinize the procurement contract with the digital reputation management company and specifically mentioned that Plaintiff Haynes may oppose. SAC ¶¶ 187–88.

## II.     Procedural Background

Plaintiffs commenced this action on September 12, 2023 against Defendants Maldonado, Dissanayake, Lopez, Valella, and Visnauskus.  [ECF No. 1].  Subsequently, Plaintiffs filed an amended complaint adding Defendants Chamber, RIOC, and Fhala.  [ECF No. 43].  Thereafter, Plaintiffs filed a Second Amended Complaint, their operative complaint.  [ECF No. 81].  Defendant Fhala filed an Answer, [ECF No. 96], and then subsequently filed a pre-motion letter seeking leave to file a motion to dismiss [ECF No. 109].  The Court, in response to the parties' letters, set a briefing schedule.  [ECF No. 111].  The Court previously granted a motion to dismiss the Second Amended Complaint filed by Defendants Chamber, Dissanayake, Lopez, Maldonado, Valella, and Visnauskus pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [ECF No. 120].

Now before the Court is a separate motion filed by Defendant Fhala to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [ECF No. 112].  Defendant Fhala is named in Count Three (race discrimination in violation of 42 U.S.C. § 1983), Count Four (retaliation in violation of 42 U.S.C. § 1983), Count Five (hostile work environment in violation of 42 U.S.C. § 1983), Count Six (race discrimination in violation of NYSHRL), Count Seven (retaliation in violation of NYSHRL), Count Eight (hostile work environment in violation of NYSHRL), and Count Nine (race discrimination in violation of NYCHRL), Count Ten (retaliation in violation of NYCHRL), and Count Eleven (hostile work environment in violation of NYCHRL).  In support of his motion, Defendant submitted a memorandum of law.  [ECF No. 113, ("Def. Mem.")].  In opposition, Plaintiffs filed a memorandum of law.  [ECF No. 115, ("Pls. Opp.")].  In further support, Defendant field a reply. [ECF No. 116, ("Def. Reply")].

## **LEGAL STANDARD**

The Second Circuit has made clear that even if a defendant has answered a complaint, a "motion to dismiss, although styled as a Rule 12(b)(6) motion, could and should [be] considered as a Rule 12(c) motion for judgment on the pleadings." *Patel*, 259 F.3d at 126.  Furthermore, "[t]he standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Id.*; *see also Pelczar v. Maimone*, No. 23-7283, 2024 WL 4690347, at *1 n.1 (2d Cir. Nov. 6, 2024) (summary order).  In the context of both Rule 12(b)(6) and 12(c) motions, "the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Patel*, 259 F.3d at 126.

Thus to survive a Rule 12(b)(6) or 12(c) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Matzell v. Annucci,* 64 F.4th 425, 433 (2d Cir. 2023).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  More specifically, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  In analyzing a motion to dismiss, the Court must "accept[ ] all of the complaint's factual allegations as true and draw[ ] all reasonable inferences in the plaintiff's favor." *Siegel v. HSBC North America Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019) (quoting *Giunta v. Dingman*, 893 F.3d 73, 78–79 (2d Cir. 2018)).

On a Rule 12(c) motion, motion for judgment on the pleadings, "courts may consider all documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." *Lively v.*

*WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305–06 (2d Cir. 2021). As such, in resolving the pending motion the Court limits itself only to those materials.

## DISCUSSION

**I.    Plaintiffs Have Not Alleged Sufficient Facts to Establish
        Liability Under Section 1983 With Respect to Defendant Fhala.**

Plaintiffs assert claims for race discrimination, retaliation, and hostile work environment under Section 1983 against Defendant Fhala in his individual capacity. *See* SAC ¶¶ 219–85.

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. As an initial matter, to state a claim under Section 1983 a plaintiff must establish that the person was acting under the color of state law. *Vincent v. Annucci*, 63 F.4th 145, 151 (2d Cir. 2023) ("plaintiff must establish that a person acting under the color of state law deprived him of a right guaranteed by the Constitution or the laws of the United States").

Plaintiffs sufficiently allege, and Defendant does not dispute, that Defendant Fhala, in his role as board member of RIOC, was acting under color of law when he engaged in the purported discriminatory conduct. *See* SAC ¶ 220. Accordingly, since the color of law requirement is satisfied, the Court examines Plaintiffs' Section 1983 claims against Defendant Fhala under the same standards governing Title VII claims with the addition of the requirement of personal involvement by each Defendant. *See Vincent*, 63 F.4th at 151; *see also Baltas v. Maiga*, 119 F.4th 255, 269 (2d Cir. 2024) (A Section 1983 claim is the same as a Title VII claim except that it requires allegations of "[p]ersonal involvement of defendants in [the] alleged constitutional

deprivations."). The Second Circuit has held that "personal involvement" means "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996); *see also Whitton v. Williams*, 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000).

### A. *Discrimination*

To plausibly allege a claim of discrimination under Section 1983, Plaintiffs must allege that (1) they are members of a protected class, (2) they were qualified for their position, (3) they suffered an adverse employment action, and (4) there is "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023). Plaintiffs must allege facts demonstrating "[p]ersonal involvement of [the defendant] in alleged constitutional deprivations." *Baltas*, 119 F.4th at 269.

Plaintiffs sufficiently allege that they are members of a protected class and that they are qualified for their positions. *See* SAC ¶¶ 221–22. Defendant does not dispute the sufficiency of the allegations with respect to these elements. Instead Defendant Fhala argues that Plaintiffs have not sufficiently alleged personal involvement by Defendant in an adverse action suffered by Plaintiffs and/or that Defendant Fhala did not engage in any actions because of Plaintiffs' race. Def. Mem. at 7–11.

Even if Plaintiffs sufficiently alleged that Defendant Fhala was personally involved in conduct that constitutes an adverse employment action, to plausibly state a discrimination claim, Plaintiffs must also allege facts that provide "at least minimal support for the proposition that the [defendant] was motivated by discriminatory intent." *Buon*, 65 F.4th at 79. Plaintiffs have failed to do so here. "The *sine qua non* of a [race-based] discriminatory action claim under Title VII is

that the discrimination must be *because of* [*race*]." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (emphasis in original); *see also Bivens v. Institute for Community Living, Inc.*, No. 14-CV-7173, 2015 WL 1782290, at *7 (S.D.N.Y. 2015). "A plaintiff can meet that burden through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (internal citations omitted).

"Direct evidence of discrimination exists where 'an impermissible criterion,' like race, '*was in fact* a 'motivating' or 'substantial' factor in the employment decision.' " *LaBarbera v. NYU Winthrop Hosp.*, 527 F. Supp. 3d 275, 290 (E.D.N.Y. 2021) (quoting *de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 23 (2d Cir. 1996) (emphasis in original); *Venezia v. Luxoticca Retail N. America Inc.*, No. 13-CV-4467, 2015 WL 5692146, at *3 (S.D.N.Y. Sept. 28, 2015) (citation omitted), *aff'd*, 699 F. App'x 53 (2d Cir. 2017) (an example of direct evidence of discriminatory intent is an employer's "remark or action [that] directly reflects a discriminatory attitude"). Here, Plaintiffs allege no direct evidence of Defendant Fhala's purported discriminatory intent. *See, e.g., DeMaria v. New York State Unified Ct. Sys.*, No. 23-CV-3627, 2025 WL 2298452, at *13 (S.D.N.Y. Aug. 8, 2025) (holding the plaintiff did not offer any direct evidence of discriminatory intent because he did not point "to any remark or action indicative of a discriminatory attitude or any workplace policy, practice, or decision based on a protected characteristic") (internal quotation marks and citations omitted). That is not uncommon. "As is well document in this Court's case law, '[w]here an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available.' " *Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024) (quoting *Halcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)). Instead

Plaintiffs argue that they plausibly alleged Defendant Fhala's discriminatory intent through allegations of disparate treatment. *See* Pls. Opp. at 17–19.

Plaintiffs are correct that showing disparate treatment "is a recognized method of raising an inference of discrimination for the purposes of making out a *prima facie* case." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)); *see also Gordon v. N.Y.C. Bd. Of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (a plaintiff can plausibly allege a 1983 claim "through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct"). Thus to plausibly allege discriminatory intent based on disparate treatment, a plaintiff must allege that the defendant treated the plaintiff less favorably than similarly situated comparators. *See Cooper v. Templeton*, 629 F. Supp. 3d 223, 230–31 (S.D.N.Y. 2022). At this stage Plaintiffs are not required to "present detailed evidence about comparators" and instead only need to assert "factual allegation[s] that similarly situated comparators exist." *Mooney v. City of New York*, No. 18-CV-328, 2018 WL 4356733, at *3 (S.D.N.Y. Sept. 12, 2018) (citing *Vega*, 801 F.3d at 86). However, Plaintiffs have failed to do so here.

As an initial matter, in an attempt to support their claim that Defendant Fhala had discriminatory intent, Plaintiffs point to allegations in the Second Amended Complaint that pre-date Defendant Fhala's nomination and confirmation as a RIOC board member and do not relate to any alleged conduct of Defendant Fhala. *See* Pls. Opp. 18–19 (citing SAC ¶¶ 56–93, 75–76, 81–84, 88, 106, 114, 129–31, 133–34). These allegations of disparate treatment of allegedly similarly situated comparators cannot be used to support an inference of discriminatory intent attributable to Defendant Fhala because they do not involve him at all. *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) ("the requisite *discriminatory intent must be held by the state*

*official in his individual capacity*. . . . liability for an Equal Protection Clause violation under §
1983 requires personal involvement by a defendant, who must act with discriminatory purpose")
(emphasis added).

Additionally, the very few allegations that Plaintiffs point to in the Second Amended
Complaint that do not pre-date Defendant Fhala's appointment to the RIOC board and actually
involve conduct of Defendant Fhala, *see* Pls. Opp at 18–19 (citing SAC ¶¶ 165, 167–70, 184–88),
completely fail to allege disparate treatment. The Second Amended Complaint is devoid of any
allegations that *Defendant Fhala* treated similarly situated comparators who engaged in similar
conduct more favorably than Plaintiffs. Thus, Plaintiffs have failed to plausibly allege an inference
of discrimination. *See Ruiz*, 609 F.3d at 495 (dismissing race discrimination claims brought under
Section 1983 because the plaintiff "ha[d] not identified a similarly-situated employee who faced
equally serious allegations and whom [the defendant] allowed to remain on the job, [the plaintiff]
ha[d] failed to raise an inference of discrimination."); *see also Mumin v. City of New York*, 760 F.
Supp. 3d 28, 51 (S.D.N.Y. 2024) (dismissing discrimination claim based on a theory of disparate
treatment because the complaint alleges insufficient facts regarding similarly situated
comparators) (collecting cases); *Haggood v. Rubin & Rothman, LLC*, No. 14-CV-3L, 2014 WL
6473527, at *12 (E.D.N.Y. Nov. 17, 2014) (dismissing discrimination claims because plaintiffs
failed to allege "how they were treated differently by defendants" compared to similarly situated
comparators).

While the Court must draw all reasonable inferences in favor of Plaintiffs as the non-
moving parties, Plaintiffs have failed to establish a *prima facie* case of discrimination because
Plaintiffs have failed plausibly allege facts to raise an inference of discrimination. *See Ruiz*, 609
F.3d at 495. Accordingly, Plaintiffs have not "nudged [their] claims across the line from

conceivable to plausible," *Twombly*, 550 U.S. at 570, and the Section 1983 discrimination claim against Defendant Fhala must be dismissed.

### B. *Retaliation*

To prevail on a Section 1983 retaliation claim a "plaintiff must establish a prima facie case of retaliation by showing 1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action."  *Collymore v. City of New York*, No. 23-1304, 2025 WL 1323784, at *1 (2d Cir. May 7, 2025) (summary order); *see also Vega*, 801 F.3d at 91 (under Section 1983 a plaintiff "must plausibly allege that: (1) defendant[] acted under the color of state law, (2) defendant[] took adverse employment action against [plaintiffs], (3) because [they] complained of or otherwise opposed discrimination."); *Williams v. Time Warner Inc.*, No. 09-CV-2962 (RJS), 2010 WL 846970, at *4 (S.D.N.Y. Mar. 3, 2010), *aff'd*, 440 F. App'x 7 (2d Cir. 2011) (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004).

Defendant Fhala does not dispute that Plaintiffs have sufficiently alleged that Defendant Fhala acted under the color of state law or that Plaintiffs engaged in protected activity known to Defendant Fhala.  In seeking dismissal, Defendant Fhala only argues that Plaintiffs have not sufficiently alleged that (1) Plaintiffs faced an adverse employment action as a result of Defendant Fhala's individual conduct and/or (2) there is any causal connection between any alleged protected activity and an adverse employment action.  *See* Def. Mem. at 18.

The Supreme Court has held that an adverse employment action, in the context of a retaliation claim, is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006); *see also Vega*, 801 F.3d at 90 ("an adverse employment action is any action that could

well dissuade a reasonable worker from making or supporting a charge of discrimination.") (internal quotation marks omitted). Accordingly, "an action need not affect the terms and conditions of a plaintiff's employment for purposes of a retaliation claim." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 n.6 (2d Cir. 2010). Additionally, "in determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *See Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Zelnik v. Fashion Inst. of Tech.,* 464 F.3d 217, 227 (2d Cir. 2006)). However, the Supreme Court has made clear "it is important to separate significant from trivial harms" when analyzing a retaliation claim because "an employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.

Plaintiffs allege that they suffered an adverse employment action because Defendant Fhala sent emails and communicated with individuals without including Plaintiffs on those communications or first discussing those matters with Plaintiffs, SAC ¶¶ 143, 145–48, 150, spoke to Plaintiffs in an antagonistic manner and was "rude and condescending," SAC ¶¶ 149, 152, 153, 177, took steps to reduce Plaintiff Haynes' financial approval thresholds, SAC ¶ 156, initiated an investigation against them, SAC ¶ 163, and criticized Plaintiffs to a local blogger. SAC ¶¶ 168– 72. Plaintiffs argue that these allegations establish a "critical mass" and considered together could dissuade a reasonable worker from making or supporting a charge of discrimination. Pls. Opp. at 12–13.

The allegations that Defendant Fhala emailed people, including stakeholders and elected officials, without including Plaintiffs or first discussing those matters with Plaintiffs, do not

amount to an adverse employment action in the context of a retaliation claim. *See Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 574 (S.D.N.Y. 2023) (concluding that the plaintiff's allegation that the defendants excluded the plaintiff "from management-wide emails" did not amount to an adverse employment action for purposes of a retaliation claim because it amounted to "a petty slight or minor annoyance"); *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 461 (S.D.N.Y. 2023) ("Additionally, exclusion from meetings, failing to be included on emails, and increased scrutiny do not amount to adverse employment actions" for purposes of a retaliation claim); *Ziyan Shi v. N.Y. Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 338–39 (S.D.N.Y. 2019) (holding that not being included on emails does not amount to an adverse employment action in the context of a retaliation claim).

Similarly, the allegations that Defendant Fhala spoke to Plaintiffs in an antagonistic or condescending manner and both privately and publicly criticized Plaintiffs, both fall into the category of "petty slights or minor annoyances that often take place at work," *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68, and do not constitute adverse employment actions. *See Richards v. Dep't of Educ. of the City of N.Y.*, No. 21-CV-338, 2022 WL 329226, at *17 (S.D.N.Y. Feb. 2, 2022) (being "screamed at . . . micromanaged and publicly derided . . . fall into the category of petty slights, minor annoyances, and simple lack of good manners that do not constitute retaliatory action"); *Ziyan Shi*, 393 F. Supp. 3d at 338–39 (holding that being yelled and screamed at are not adverse employment actions for purpose of Title VII retaliation); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 848 (S.D.N.Y. 2013) (holding that publicly yelling at plaintiff on the sales floor did not constitute an adverse employment action); *Martinez v. N.Y.C. Dep't of Educ.*, No. 04-CV-2728, 2008 WL 2220638, at *12 (S.D.N.Y. May 27, 2008) ("[I]ncidents where [a supervisor]

publicly yelled at [plaintiff] for various reasons or called him 'shit' . . . constitute, as a matter of law, the sorts of petty slights and personality conflicts that are not actionable.").

Additionally, the allegation that "[w]ithin a week after Plaintiffs filed their initial Complaint, Defendant Fhala sought an 'emergency' Board meeting to reduce [Plaintiff] Haynes's' monetary approval thresholds by nearly 50%," SAC ¶ 156, is also insufficient to constitute an adverse employment action because based on the allegations in the Second Amended Complaint, no action occurred.  Although Defendant Fhala allegedly wanted to hold an emergency board meeting to reduce Plaintiff Haynes' monetary approval thresholds, there are no further allegations that the board meeting occurred or that Plaintiff Haynes' monetary approval thresholds were actually reduced.  Therefore, this allegation does not constitute an adverse employment action. *See, e.g., Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67–68, (Title VII "does not set forth a general civility code for the American workplace" and its "antiretaliation provision protects an individual not from all retaliation, *but from retaliation that produces an injury or harm*.") (emphasis added); *Myers v. Doherty*, No. 21-CV-219, 2021 WL 5599502, at *8 (S.D.N.Y. Nov. 30, 2021), *aff'd*, No. 21-3012-CV, 2022 WL 4477050 (2d Cir. Sept. 27, 2022) (explaining that there was no adverse employment action in the context of a retaliation claim because although the plaintiff was notified of a potential future transfer, the transfer never actually "materialize"); *see also Durkin v. Verizon New York, Inc.*, 678 F. Supp. 2d 124, 139 (S.D.N.Y. 2009) (explaining that "[i]n this Circuit, an action must actually occur to be considered an adverse employment action" and so "the threat to demote Plaintiff does not constitute an adverse employment action and therefore cannot support Plaintiff's claims of retaliation") (citing *Thomas v. Bergdorf Goodman, Inc.,* No. 03-CV-3066, 2004 WL 2979960, at *10 (S.D.N.Y. Dec. 22, 2004)); *see also Zimpfer v. Hilbert Coll.*, No. 1:21-CV-231, 2025 WL 1758266 (W.D.N.Y. June 25, 2025) (explaining that

the threat of termination does not support a *prima facie* retaliation claim because the mere threat of discipline or action does not constitute an adverse employment action) (collecting cases).

Finally, the allegation that Defendant Fhala initiated an "investigation into Plaintiffs" by "emailing both the NYSIG's office and the COELIG to suggest that Plaintiffs' procurement of a contract with a digital reputation management company was somehow improper," SAC ¶ 163, does not constitute an adverse employment action. *See Tillery v. New York State Off. of Alcoholism & Substance Abuse Servs.*, 739 F. App'x 23, 27 (2d Cir. 2018) (concluding that "[a] government investigation may constitute an adverse employment action" if it results in further negative consequences); *see also Kirkland-Hudson*, 2024 WL 4277940, at \*14 (explaining that a negative performance memo was not an adverse employment action because although the memo was issued no discipline ever resulted from the negative performance review) (collecting cases); *see also Bain v. Wrend*, 2020 WL 1316660, at \*8 (D. Vt. Mar. 20, 2020) (holding that "an investigation which does not result in workplace discipline does not qualify as an adverse employment action" and that "a referral to a third-party such as a police department for investigation of work-place conduct is not an adverse employment action"). While Plaintiffs allege that they were ultimately placed on paid administrative leave, Plaintiffs do not allege that was in connection with the investigation that Defendant Fhala allegedly initiated. *See* SAC ¶¶ 190–91. Thus, Defendant Fhala's email to NYSIG and COELIG that Plaintiffs did not allege resulted in any discipline does not constitute an adverse employment action in the context of a retaliation claim.

While Plaintiffs urge that these allegations considered in the aggregate could dissuade a reasonable worker from making or supporting a charge of discrimination, this Court disagrees. It is true that in determining whether alleged conduct amounts to an adverse employment action in the context of a retaliation claim courts consider the allegations "both separately and in the

aggregate." *See Hicks*, 593 F.3d at 165.  However, the Supreme Court has made clear "an employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.  Here, as explained above, all the alleged actions fail individually to allege an adverse employment action in the context of a retaliation claim, and "they also fail in the aggregate[,]" because "[i]ndividually the actions were trivial, and placed in context they remain trivial." *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556 (2d Cir. 2011); *accord Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 268 (E.D.N.Y. 2012).

Furthermore, Plaintiffs allege that on or about December 8, 2023, they "filed the amended complaint, adding the Chamber, RIOC, and Fhala as defendants."  SAC ¶ 180.  Retaliation must plausibly "dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 91.  Accepting Plaintiffs' own allegations as true, Plaintiffs in response to all these aforementioned purported adverse employment actions in turn amended their complaint to name Defendant Fhala and other defendants.  Thus, Plaintiffs themselves were not dissuaded from raising complaints.  *See, e.g., Tepperwien*, 663 F.3d at 572 ("Indeed, while the test is an objective one, it is relevant that [the plaintiff] himself was not deterred from complaining—he complained numerous times.").

Accordingly, Plaintiffs' Section 1983 retaliation claim against Defendant Fhala must be dismissed for failure to plausibly allege an adverse employment action perpetrated by Defendant Fhala.[3]

---

[3] Because the Court has concluded Plaintiffs failed to allege an adverse employment action the Court does not reach the issue whether such actions were causally connected to Plaintiffs' protected activities.

### C. *Hostile Work Environment*

"To establish a hostile work environment under [] Section 1983, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (internal citations and quotations omitted); *see also Royall v. City of Beacon*, No. 24-CV-3, 2024 WL 4266546, at *18 (S.D.N.Y. Sept. 23, 2024). Furthermore, "[a] plaintiff must also demonstrate that she was subjected to the hostility because of [their] membership in a protected class." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011) (A plaintiff must also plausibly allege "that the hostile work environment was caused by animus towards [him or her] as a result of [his or her] membership in a protected class.") (citation omitted); *see also Forts v. City of N.Y. Dep't of Corr.*, 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003) ("[a]n environment that would be equally harsh for all workers, or that arises from personal animosity, is not actionable under the civil rights statutes").

The Second Circuit has held that "[p]roving the existence of a hostile work environment involves showing both 'objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). In determining whether a plaintiff has plausibly alleged an actionable hostile environment, courts must look at the "totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Littlejohn*, 795 F.3d at 321

(internal citation and quotations omitted).  In addition, a Section 1983 claim requires a plaintiff to allege facts "that the individual was <u>personally involved</u>."  *Abadi*, 705 F. Supp. 3d at 185 (underlining in original).

Defendant Fhala argues that Plaintiffs fail to state a hostile work environment claim against him because Plaintiffs do not allege that his actions "were the result of discriminatory racial animus or that [Plaintiffs] faced more than mere petty slights or trivial inconveniences."  Defs. Mem. at 13.  Plaintiffs allege that Defendant Fhala repeatedly ignored the practice of how a Board Member should contact stakeholders and elected officials and repeatedly spoke to Plaintiffs in a discriminatory, antagonistic, demeaning manner, *see* SAC ¶¶ 145–53, falsely accused Plaintiffs of blocking his appointment to committee positions and Plaintiff Robinson of deliberately delaying a RIOC Board meeting, SAC ¶¶ 148–49, and took steps to reduce the scope of Plaintiffs' authority, initiated an investigation against them, and criticized Plaintiffs to bloggers, and falsely accused Plaintiff Haynes of prohibiting his staff from speaking to Board Members.  SAC ¶¶ 155–76, 184–89.  Plaintiffs argue that these allegations are sufficiently severe as to create a hostile work environment.  Pls. Mem. at 20.

While Plaintiffs may have "subjectively perceive[d] the environment to be abusive," *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 229 (2d Cir. 2024), the allegations in the Second Amended Complaint with respect to Defendant Fhala do not meet the objective standard for a hostile work environment claim.  The handful of incidents that Plaintiffs allege do not indicate that their workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Pattanayak v. Mastercard Inc.*, No. 22-1411, 2023 WL 2358826, at *4 (2d Cir. Mar. 6, 2023) (summary order) (internal citations omitted).  Even when considered in the aggregate, the allegations do not amount to a pervasive hostile work environment. *See Boyar v. Yellen*, No. 21-

507, 2022 WL 120356, at *3 (2d Cir. Jan. 13, 2022) (summary order) (finding that there was no hostile work environment where the plaintiff alleged that his supervisor threatened to "wring [the plaintiff's] neck," "ignored him at a meeting," "yelled at him very loudly," and "told him he had 90 minutes to complete two certification exams, when he had 60 minutes to complete each."); *see also Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (allegations that the plaintiff's supervisor "wrongly excluded [plaintiff] from meetings, excessively criticized [plaintiff's] work, refused to answer work-related questions, arbitrarily imposed duties outside of [plaintiff's] responsibilities, threw books, and sent rude e-mails" were insufficient to allege a hostile work environment); *Miller-Sethi v. City Univ. of New York*, No. 21-CV-8591, 2023 WL 419277, at *7–8 (S.D.N.Y. Jan. 26, 2023) (allegations that defendant undermined plaintiff's authority in the workplace, used microaggression, and sent a "scathing email" were not severe or pervasive enough to support a hostile work environment claim). Plaintiff's allegations, even considered in the aggregate, were not sufficiently severe or pervasive enough to amount to allege a hostile work environment claim.

Furthermore, even if Plaintiffs' allegations were found to be sufficiently severe or pervasive, their claim would nonetheless fail because, for the same reasons the Court explained above, *see* Sec. I(A) *supra*, Plaintiffs have failed to allege facts that any hostile work environment was *caused by* an animus Defendant Fhala personally held towards Plaintiffs because of their membership in a protected class. *See Brennan*, 192 F.3d at 318. Instead, Plaintiffs again try to point to others' alleged disparate treatment of Plaintiffs to demonstrate that Defendant Fhala's actions were also motivated by animus. For example, Plaintiffs argue that it is "reasonable to infer that Fhala's actions were also racially motivated given the racially charged atmosphere on Roosevelt Island, the ongoing racial harassment of Plaintiffs, the fact that Plaintiffs

were treated less favorably than previous white RIOC executives, and the fact that Fhala immediately began to unfairly scrutinize and antagonize Plaintiffs once he joined the Board." Pls. Opp. at 21. However, Plaintiffs do not allege that *Defendant Fhala* treated Plaintiffs less favorably than *he* treated similarly situated comparators. As the Court has explained, other people's alleged disparate treatment of Plaintiffs cannot be used to support a Section 1983 claim *against Defendant Fhala*. *See Reynolds*, 685 F.3d at 204 ("§ 1983 requires personal involvement by a defendant, who must act with discriminatory purpose").

As such, Plaintiffs' hostile work environment claim against Defendant Fhala must be dismissed because Plaintiffs failed to allege that any of Defendant Fhala's conduct was caused by racial animus towards Plaintiffs. *See Bermudez*, 783 F. Supp. 2d at 606 (dismissing the plaintiff's hostile work environment claim because there was "no evidence that [the defendant] participated in any acts or approved of any acts due to animosity towards [the plaintiff] because of her religion, race, or gender.")

Each of Plaintiffs' federal Section 1983 claims are dismissed for the reasons discussed above. Plaintiffs have now filed three complaints in this action and in opposing Defendant Fhala's motion Plaintiffs did not request further leave to amend, as such these claims are dismissed with prejudice. *See Felder v. United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022) ("[W]e certainly see no error or abuse of discretion in the District Court's dismissal of [the plaintiff's] complaint with prejudice, as [the plaintiff] did not request leave to re-amend.").

## II.      NYSHRL and NYCHRL Claims

Counts Six, Seven, Eight, Nine, Ten, and Eleven assert various state and city law claims against Defendant Fhala. *See* SAC ¶¶ 219–85. Because, for the reasons outlined above, all of Plaintiffs' federal law claims against Defendant Fhala must be dismissed, the Court declines to

exercise supplemental jurisdiction over the alleged state law claims against Defendant Fhala. 28 U.S.C. § 1367(c)(3); *see also Camarda v. Snapple Distributors, Inc.*, 346 F. App'x 690, 693 (2d Cir. 2009). Accordingly, Counts Six, Seven, Eight, Nine, Ten, and Eleven are dismissed without prejudice to renewal in state court.

## <u>CONCLUSION</u>

For the reasons stated above, IT IS HEREBY ORDERED that the motion filed by Defendant Fhala is GRANTED and all the federal Section 1983 claims asserted in the Second Amended Complaint against Defendant Fhala are DISMISSED with prejudice. IT IS FURTHER ORDERED that Counts Six, Seven, Eight, Nine, Ten, and Eleven are dismissed without prejudice to renewal in state court.

IT IS FURTHER ORDERED that on or before November 3, 2025, Plaintiffs and Defendant RIOC, the only remaining defendant in this action, shall submit a joint Proposed Case Management Plan and Scheduling Order and joint letter, as required by this Court's Individual Rules of Practice. The documents should be filed on ECF and sent to this Court via email (in both PDF and Microsoft Word formats).

The Clerk of Court is respectfully requested to terminate docket entry 112.

**SO ORDERED.**

**Date:  September 30, 2025**
      **New York, NY**

                                    **MARY KAY VYSKOCIL**
                                    **United States District Judge**